RAYMOND FRED WALKER

*v.*

MONONGAHELA POWER COMPANY,

A CORPORATION, AND OKEY FLOYD

(No. 12192)

Submitted May 7, 1963.        Decided July 9, 1963.

826

*Ernest R. Bell, Russell L. Furbee, Charles D. Bell,* for appellants.

*Pietranton & Alpert, Frank A. Pietranton, Paul E. Parker, Jr.,* for appellee.

Caplan, Judge:

This civil action was instituted in the Circuit Court of Marion County on June 9, 1961, by the plaintiff, Raymond Fred Walker, to recover from the defendants, Monongahela Power Company, a corporation, and Okey Floyd, an employee of said company, damages for personal injuries sustained by the plaintiff as a result of a collision between the vehicle driven by the plaintiff and the vehicle of the defendant company. At the time of the collision the defendant's vehicle was being driven by Okey Floyd. The plaintiff charges that the negligent conduct of the defendants was the proximate cause of his injuries and in his complaint seeks to recover damages in the sum of one hundred thousand dollars.

Upon the trial of this case the court overruled the defendants' motion for a directed verdict and the jury returned a verdict for the plaintiff and against both defendants in the amount of thirty five thousand four hundred dollars. The circuit court entered judgment on the verdict and subsequently overruled a motion of the defendants for a new trial. To that judgment the defendants prosecute this appeal.

The collision in which the plaintiff was injured occurred at about 9:00 A. M. on June 1, 1960, on United States Highway Route No. 22. This highway is commonly known as Freedom Way and is within the corporate limits of the City of Weirton, extending in a westerly direction to the bridge which leads to Steubenville, Ohio. The evidence is conflicting as to the markings upon and along this highway and as to the manner in which the accident occurred.

The plaintiff alleges that at the time and upon the date aforesaid he was driving his motorcycle in a westerly direction along Freedom Way; that he was traveling on the right-hand side of the highway at a speed of twenty to twenty five miles per hour and in a careful and prudent manner. The plaintiff further says that when he was approximately twelve or thirteen hundred feet along Freedom Way from the intersection of U. S. Route No. 22 and State Route No. 2 he noticed the defendant company's truck in front of him,

traveling in the same direction and at approximately the same speed. The plaintiff testified that he followed the truck for a short distance and, seeing that the highway was straight and unobstructed, decided to pass; that he followed at a safe distance and, upon determining that he could pass safely, sounded his horn and proceeded to overtake the company's truck. He testified that as he was overtaking the truck and was almost parallel with it, the truck began to make a left turn; that he pulled to the left in an effort to avoid the accident but was unsuccessful and the collision occurred. According to the plaintiff's testimony, the defendant Floyd did not stop prior to making a left turn, nor was any visible signal given to indicate that such left turn would be made.

The evidence of the defendants reveals that on the morning aforesaid a line crew of the defendant company, consisting of the foreman, the driver, and four other employees, was traveling in a westerly direction along Freedom Way in a line truck driven by the defendant Okey Floyd; that they were proceeding along this road for the purpose of making certain repairs on pole 24, which was the property of the defendant company; that Freedom Way was a three lane highway, one lane being reserved for westbound traffic and two lanes for traffic going east; that said lane in which the company's truck was traveling was separated from the two eastbound lanes by solid double white lines; that four or five automobiles were following the company truck at the time it approached the vicinity of pole 24; that the defendant driver, prior to making a left turn, came to a complete stop at the extreme lefthand portion of the single lane, at which time two or three vehicles passed on his right side; that he looked into his rear view mirror and, seeing no vehicles, turned left at about a forty five degree angle and at a speed of three to four miles per hour; and that when he was in the eastbound lanes he heard a noise and felt a thud, which he later discovered was the collision between his vehicle and that of the plaintiff. The defendant Floyd testified that he did not hear any signal by the plaintiff indicating that plaintiff intended to pass his vehicle. He also testified that at approximately six hundred feet east of pole 24 he turned on his automatic directional signal, indicating that

he was going to make a lefthand turn. Floyd stated that the first time he saw the plaintiff or the motorcycle was after the accident when he got out of the truck and saw them on the ground.

The principal defense having been premised on the allegation that Freedom Way, from its intersection with State Route No. 2 to the bridge was, on June 1, 1960, a no passing zone and that the plaintiff attempted to pass in violation of the law, it is essential to consider in detail the markings upon and along that highway. The following description of Freedom Way is based upon the evidence adduced at the trial and relates to the time of the accident.

Freedom Way is a strip of highway approximately thirty two hundred feet in length. It is a straight road and, except for a slight rise in one portion thereof, the view of the entire length is unobstructed. This road has a blacktop surface and is thirty feet in width. It is contended by the defendants that Freedom Way is a three lane highway and that the one lane designated for westbound traffic is separated for its entire length from the two eastbound lanes by solid double white lines. The presence of the double white lines is disputed and will hereinafter be more fully considered. Testimony on behalf of the defendants also indicates the presence of Do Not Pass signs for westbound traffic, one at the intersection of Freedom Way and State Route No. 2, one about five hundred feet farther west, and another "just before you cross the slight rise". The presence of Do Not Pass signs is generally admitted, but there is some conflict in the evidence as to the number of such signs east of pole 24.

The State Road Commission is authorized by statute to designate a particular portion of a highway as a no passing zone. This may be accomplished in either of two ways, by appropriate signs or by markings on the roadway. Code, 1931, 17C-7-7, as amended. Regardless of the number of Do Not Pass signs, it is uncontradicted that the last such sign east of pole 24 was located just before the rise in the elevation of the road, a distance of some fourteen hundred to fifteen hundred feet from the scene of the accident. It is

important to note here that the aforesaid code section does not place any mandatory duty on the road commission to designate the end of a no passing zone.

The grounds of error assigned by the defendants may be summarized as follows:  (1) The verdict is contrary to the law and evidence;  (2) the plaintiff was guilty of negligence that proximately caused and proximately contributed to the injuries complained of, barring recovery by him against the defendants;  (3) the negligence of the plaintiff concurred with the negligence of the defendant, if any, proximately causing and contributing to his injuries, barring a recovery on his part;  (4) the verdict is excessive, appearing to have been given under the influence of passion, prejudice, partiality, misconception of the evidence or lack of due consideration;  (5) the evidence gives rise to no duty owed to the plaintiff by the defendants which the defendants breached, inasmuch as the record fails to show in any way that the defendants, or either of them, knew of the presence of the plaintiff, and of his violation of law;  (6) the refusal by the trial court to give to the jury certain instructions offered by the defendants;  (7) the giving by the trial court, over the objections and exceptions of the defendants, of certain instructions offered by the plaintiff; and (8) the overruling of the defendants' motion for a new trial.

The assignment of error relating to an excessive verdict was not discussed in the defendants' brief and apparently was abandoned. However, we are of the opinion that it is without merit. The plaintiff received serious injuries as a result of this collision, the testimony being uncontradicted that some of such injuries are of a permanent nature. There is no indication in the record of this case that the jury was influenced by passion, prejudice or partiality, or that there was a misconception of the evidence or a lack of due consideration. *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Davis* v. *Pugh*, 133 W. Va. 569, 57 S. E. 2d 9; *Bailey* v. *Transfer Company*, 135 W. Va. 730, 65 S. E. 2d 82.

All the other assignments of error listed above, except No. 6 and No. 7, which relate to instructions, concern the evidence adduced in the trial of this case. They give rise to

the question as to whether or not, in view of such evidence, this case should have been submitted to the jury. The defendants vigorously assert that the plaintiff was guilty of negligence, that he attempted to pass the company's vehicle in a no passing zone, thereby violating the law, and that the evidence and physical facts favored defendants to such a degree that the case should not have been submitted to the jury. The jury having decided against them, the defendants now argue that the verdict is based on testimony wholly inconsistent with the physical facts and should be set aside.

The principal contention of the defendants is that the entire length of Freedom Way is a no passing zone and that when Walker attempted to overtake and pass the company's truck he violated the provisions of Code, 1931, 17C-7-7, as amended, and became guilty of negligence as a matter of law. This contention requires an examination of the evidence, not for the purpose of deciding here whether this was a no passing zone but rather for the purpose of determining whether the evidence was such that it was within the province of the jury to decide whether the plaintiff attempted to pass the truck in a no passing zone.

Code, 1931, 17C-7-7, as amended, upon which the defendants heavily rely, reads as follows: "The state road commission is hereby authorized to determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof."

As heretofore noted, the statute provides that portions of the highway where overtaking and passing would be especially hazardous may by appropriate signs or markings on the roadway indicate the beginning and end of such zones. Here it is contended that Do Not Pass signs and solid double white lines were present on Freedom Way and that the whole of such highway was a no passing zone. Let us first consider the evidence with regard to the signs.

Robert Smith, a witness for the plaintiff, testified that there was a Do Not Pass sign at the intersection of U. S. Route No. 22 and State Route No. 2, one approximately fourteen hundred feet east of pole 24, and one about one thousand feet west of said pole. These were for westbound traffic.

The testimony of Fred Risovich, a lieutenant on the Weirton Police Department, places a Do Not Pass sign at the aforesaid intersection and one "Before you get to this hill". The latter sign is in the same place as that indicated by witness Smith, approximately fourteen hundred feet east of pole 24. This witness testified that there was no such sign in the vicinity of the accident. He further testified that he had an unobstructed view of fourteen hundred feet in an easterly direction from pole 24.

Raymond Fred Walker, the plaintiff, testified as to the existence of a Do Not Pass sign at the intersection of two and twenty two and one at Gullette Avenue. The latter is in the same position as indicated by the above two witnesses, approximately fourteen hundred feet east of pole 24. He said that he knew of no other such signs on that day.

Roy Posey, a witness called on behalf of the defendants, related in his testimony that there were three no passing signs, one at the intersection, another five hundred feet west and a third "just before you cross the slight rise". He also testified that there was another Do Not Pass sign approximately two hundred feet west of pole 24.

It is evident from the testimony in this case, that there is very little, if any, conflict in relation to the existence and location of the Do Not Pass signs on the northern side of Freedom Way. Each of the witnesses, with the exception of Roy Posey, testified that there were two signs between the intersection of U. S. Route 22 and State Route 2 and the rise in the road approximately fourteen hundred feet east of pole 24. There is no evidence that there were any such signs in the vicinity of the accident or within that fourteen hundred foot strip of road. As traffic proceeded in a westerly direction the last no passing sign observed by any witness

before arriving at the scene of the accident was located at a place on the highway where the elevation is higher than the remainder of Freedom Way. It is uncontradicted that the view in a westerly direction from the crest of this elevation to the vicinity of the bridge was clear and unobstructed. In view of this evidence we are of the opinion that in so far as the no passing signs were concerned, it was a question for the jury to determine whether or not this was a no passing zone. It is evident that the jury, in relation to such signs, did not find this to be a no passing zone and this Court will not disturb that finding.

Of further pertinence in determining whether this accident occurred in a no passing zone is the consideration of the evidence relating to the markings on the roadway. This evidence is more conflicting than that regarding the signs. The defendants insist that the existence of double solid white lines at the scene of the accident proves conclusively that this mishap occurred in a no passing zone. Let us, however, examine the evidence as to the existence of such lines.

Witness Schellhase, a registered professional engineer called for the plaintiff, testified that there was some evidence of double lines on the highway in question but that they were not very clear. He said he did not observe any in the vicinity of pole 24. He further testified that except for the rise in the road the entire length of Freedom Way was straight and the view was unobstructed.

Robert Smith, at the request of the plaintiff, made an investigation of the highway in question shortly after the accident. With regard to markings, he testified that he observed a strip on each side of the road but no markings between those two lines. He stated that there were no markings on the highway from pole 24 to the no passing sign fourteen hundred feet east. He further stated that the highway was double lined from the intersection of U. S. Route No. 22 and State Route No. 2 to the top of the rise, near the last no passing sign east of pole 24.

Police Lieutenant Fred Risovich, who investigated this accident, testified that there were no lines at all on that

date. On cross-examination he stated, "on close observation I didn't observe the lines". Furthermore, in his report of the accident he noted that no lanes were designated. He stated that he saw evidence of lines on the highway but he did not think that one could see them from a moving vehicle. He also testified that looking east from pole 24 his vision was unobstructed along the highway for fourteen hundred feet.

Police Captain Andrew Olenick also testified that the accident report showed there were no lanes in the vicinity of the collision. He said there had been lanes marked but they were barely visible. Upon being called as a witness for the defendants, he stated that the lines were brighter and more visible at the rise in the road.

Raymond Fred Walker testified that he remembered that the road had at one time been marked as contended by the defendants, but that there were no lanes or any markings on the road on June 1, 1960.

James W. Ashcraft, a witness for the defendants, testified that Freedom Way was a three lane highway; that one lane was reserved for westbound traffic and the other two for traffic going east; that the north or westbound lane was separated from the other two lanes by double lines. On direct and cross-examination this witness stated that the lines were worn and dim and that it would be difficult to see them while driving a vehicle.

Walter Frieze, a witness for the defendants, testified that he was employed by the State Road Commission to paint lines on the highway and that Freedom Way was in his territory. He stated that double white lines had been painted on that road but that there were several breaks in the lines. He was not certain as to the last time they were painted prior to June 1, 1960.

Other witnesses called on behalf of the defendants testified that there were double white lines on the highway but all agreed that they were dim, some saying that they were in patches on the highway, some saying they were faint. Roy Posey, foreman of the line crew, stated that the double

lines in the vicinity of the accident were faint, but "they were legible, could make them out easy".

In view of all the evidence relating to the Do Not Pass signs and the markings on the roadway, we can not say, as a matter of law, that the vicinity in which this collision occurred was a no passing zone. Nor does the fact that Walker traveled this highway frequently change our finding. We are concerned with the condition of the highway on the day of the accident. Traffic regulations change from time to time and a driver is charged with the responsibility of complying only with such regulations as are clearly apparent at the time. According to the testimony, "no passing" signs appeared only at places where it was obvious that one should not pass. These were at an intersection and at a rise in the road, where vision of oncoming traffic was obstructed. There were no such signs in the vicinity of the accident. Walker attempted to pass on a portion of the road where there admittedly was an unobstructed view of fourteen hundred feet. The evidence as to the existence of double white lines in the vicinity of the accident was conflicting, but it appears that the preponderance of the evidence shows that they were very faint, if visible at all.

These are matters for jury determination. It is apparent that the jury found from all the evidence that the accident did not occur in a no passing zone.

In addition to their contention that the accident happened in a no passing zone, the defendants say that the negligence of the plaintiff precludes his recovery. Again the evidence is highly conflicting. We refer to the manner in which this mishap occurred.

There are several main points of contention. Of principal import, did the truck stop before it made a left turn? Did the defendant driver Floyd signal to indicate that he was going to make a left turn? Did the driver of the truck keep a proper lookout for traffic to his rear prior to turning left? Did Walker, the plaintiff, have a clear vision of the road in front of him when he attempted to pass the line truck? Did Walker sound his horn as a signal of his intention to pass

the defendants? Evidence on all these questions was presented to the jury.

In relation to the evidence concerning the above questions, it is sufficient, without going into the testimony of witnesses in detail, to note that the record is replete with conflict and contradictions. Floyd, whose testimony is supported by that of his fellow employees, said that he stopped his truck in the north lane prior to making a left turn. This is refuted by Walker. In fact, the plaintiff said that the truck did not even slow down before turning left. Defendant Floyd testified that he turned on his directional signal indicating a left turn. This testimony is supported by witnesses Huggins and Posey, two occupants of the truck. Witness Ivan Davis, another occupant of the truck, said he did not notice the signal. Raymond Fred Walker testified that at no time did he see a signal from the truck indicating that a left turn was anticipated.

There is conflict in the testimony as to whether the defendant driver kept a proper outlook for traffic coming from the rear of the truck. The plaintiff asserts that if he had he easily would have seen the motorcycle and could have avoided the accident. There was no evidence that the plaintiff was driving his vehicle at an excessive rate of speed, or that the highway was not clear so far as oncoming traffic was concerned. Another point of conflict is whether Walker sounded his horn as a signal of his intention to pass. The plaintiff testified that he did. Defendant Floyd and the other occupants of the truck heard no such signal. Again, these are matters for jury determination.

In this case the jury was confronted with evidence which was replete with conflict and has rendered its verdict. This verdict was approved by the trial court. In *Stephens* v. *Bartlett*, 118 W. Va. 421, 191 S. E. 550, and in many other cases, this Court has held that an appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence. *Shaw* v. *Perfetti*, 147 W. Va. 87, 125 S. E. 2d 778; *Laslo* v. *Griffith*, 143 W. Va. 469, 102 S. E. 2d 894; *Wilson, Adm'x.* v. *Edwards*, 138 W. Va.

613, 77 S. E. 2d 164; *Franklin v. Pence,* 128 W. Va. 353, 36 S. E. 2d 505; *Queen v. Man Hospital,* 128 W. Va. 574, 37 S. E. 2d 443; *Horchler v. Van Zandt,* 120 W. Va. 452, 199 S. E. 65; *Ware v. Hays,* 119 W. Va. 585, 195 S. E. 265. In strong support of the above stated rule is the language in 5 Am. Jur. 2d, Appeal and Error, Section 833: "The rule is applicable although the appellate court, had it been in the place of the jury, would have reached a different verdict, and it appears to apply with even greater force where the trial judge, by denying a motion for a new trial made on ground of insufficiency of the evidence, has approved the jury's findings."

When the evidence in a case is in conflict, it is sometimes difficult to determine just where the province of the jury should end and that of the court should begin. That decision must be determined by the evidence in each case. It has been said on many occasions by this Court that in determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence must be assumed as true. *Bower v. Brannon,* 141 W. Va. 435, 90 S. E. 2d 342; *Butcher v. Stull,* 140 W. Va. 31, 82 S. E. 2d 278.

In the instant case, the question as to whether there was primary negligence on the part of the defendants or, assuming primary negligence, whether Walker was guilty of negligence contributing to the collision and his resulting injuries, were factual ones for the jury. Likewise, it was a factual question for the jury as to whether this collision occurred in a no passing zone. There is evidence to support the verdict of the jury and we will not, in view of the established rules, disturb that verdict.

We are not unmindful of the authorities which support the defendants' contention that an appellate court will set aside a jury verdict where, upon the whole evidence, it appears to be plainly wrong, without sufficient evidence to support it and clearly against the weight of evidence. These

authorities constitute established and accepted law but, in view of the evidence related above, they do not apply to the case at bar.

The defendants assign as reversible error the giving by the trial court of plaintiff's Instructions No. 11, No. 16, No. 19 and No. 20. A careful examination of the record reveals that the defendants made only general objections to plaintiff's Instructions Nos. 11 and 16, no grounds whatever having been assigned as reasons for such objections. The defendants objected to the giving of Instruction No. 19 for the reason that it was fully covered by plaintiff's Instruction No. 20, and for the further reason that the findings of the jury must be based on the evidence. The defendants also objected to plaintiff's Instruction No. 20, stating as their reason that the findings of the jury must be based on the evidence. Each of these instructions tells the jury that its findings must be based on the evidence and we can see no reversible error in the trial court's action. In view of the nature of these objections, without further specific grounds, they are to be considered general in nature.

This Court many times has held that in civil cases only specific grounds of objection to instructions shall be considered. *Slater* v. *United Fuel Gas Company*, 126 W. Va. 127, 27 S. E. 2d 436; *Bragg* v. *Whitten Transfer Co.*, 125 W. Va. 722, 26 S. E. 2d 217; *Deitz, Trustee* v. *County Court of Nicholas County*, 122 W. Va. 296, 8 S. E. 2d 884; *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65; *Saunders* v. *McCown, et al.*, 120 W. Va. 294, 198 S. E. 520; *Hale* v. *McGinley, et al.*, 119 W. Va. 565, 195 S. E. 201. In addition to these authorities see R.C.P. Rule 51, the pertinent part of which reads: "No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; * * *."

It is noted that the defendants rely upon objections to plaintiff's Instructions Numbers 11, 16 and 20, contained in a memorandum which they filed approximately seven days after the verdict of the jury. In view of the above

quoted portion of R.C.P. Rule 51, we hold that such objections were not timely made and that they will not be considered here.

As a further assignment of error the defendants here complain of the ruling of the trial court in refusing to give to the jury Instructions Numbers 1, 12, 14, 18, 21 and 23, offered by the defendants. Instruction No. 1, refused by the court, was a peremptory instruction. In view of our holding herein that the evidence presented factual questions for jury determination, no error was committed by refusing such instruction. *Slater* v. *United Fuel Gas Company*, 126 W. Va. 127, 27 S. E. 2d 436.

We see no error in the court's refusal of Instruction No. 12, offered by the defendants. That instruction told the jurors that if they believed from a preponderance of the evidence that Raymond Fred Walker violated a state statute by wrongfully attempting to pass in a no passing zone and that such violation proximately contributed to the injuries of the plaintiff, then the plaintiff is not entitled to recover from the defendants. This instruction concludes that Freedom Way was a no passing zone at the time of the accident, a matter which was to be decided by the jury. Instruction No. 16, offered by the defendants and given by the court, properly presented the question to the jury as to whether or not Freedom Way by appropriate signs or markings was made a no passing zone. Instruction No. 20, also submitted by the defendants and given by the court, properly covered the question of contributory negligence in this case. The giving of the two latter instructions sufficiently covered those matters attempted to be given by defendants' Instruction No. 12, and no error was committed by its refusal.

Instruction No. 14, offered by the defendants and refused by the court, instructed the jury that if they believed from the evidence that the defendant, Floyd, was operating the truck on a public highway, exercising reasonable care, then Floyd had a right to assume that the plaintiff would also act with reasonable care. This is an abstract proposition of law and its refusal does not constitute prejudicial error. *Thrasher* v. *Amere Gas Utilities Company*, 138 W. Va. 166,

75 S. E. 2d 376; *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 62 S. E. 2d 126; *Elswick* v. *Charleston Transit Company,* 128 W. Va. 241, 36 S. E. 2d 419.

The defendants complain of the refusal of their Instruction No. 18. That instruction told the jury that the driver of a vehicle overtaking from the rear and attempting to pass a forward vehicle traveling in the same direction must not only give an audible signal but before attempting to pass must also determine whether the driver of the forward vehicle knew he was behind, had heard the signal and did accord him the right of way. The law as stated in that instruction imposes a higher duty upon the driver of such overtaking vehicle than is imposed upon him by the law of this State. Code, 1931, 17C-7-3 (a), as amended. In imposing such duty the instruction clearly misstates the law and its refusal by the trial court does not constitute error. *Overton* v. *Fields,* 145 W. Va. 797, 117 S. E. 2d 598.

Instruction No. 21, offered by the defendants and refused by the court, informed the jury that the defendant Monongahela Power Company, under its electric franchise granted to it by the City of Weirton, had the right to use the streets and highways for the purpose of carrying out its obligations under the franchise. There was no issue in this case as to the right of the power company to use this highway. A trial court may properly refuse an instruction based upon immaterial and non-probative facts incidentally revealed on the trial of an issue. *Palmer* v. *Magers,* 85 W. Va. 415, 102 S. E. 100. No prejudicial error was committed by the refusal to give this instruction.

The trial court properly refused Instruction No. 23 offered by the defendants. That instruction not only assumes a conclusion, that is, that Walker attempted to pass in a no passing zone, but it also repeats the questions of concurrent and contributory negligence raised in instructions which were given. Duplication of instructions is unnecessary and undesirable. It is not error to refuse to instruct on a point already sufficiently covered by other correct instructions given in the case. *Keffer* v. *Logan Coca-Cola Bottling Works, Inc.,* 141 W. Va. 839, 93 S. E. 2d 225; *Thrasher* v.

*Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; 10 M. J., Instructions, Sections 41 and 49.

As no prejudicial error appears in the case, the judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*