STATE *Ex Rel.* GRACE M. SOVINE AND
GRACE M. SOVINE

*v.*

JOHN STONE AND MARYLAND CASUALTY CO., *a Corp.*

(No. 12343)

Submitted January 19, 1965.        Decided March 16, 1965.

*Norman E. Rood,* for appellants.

*Marshall, Harshbarger & St. Clair,* for appellees.

BROWNING, PRESIDENT:

Plaintiff, Grace Sovine, instituted this action for slander and false imprisonment in the Circuit Court of Cabell County against John Stone, a constable for Barboursville District of Cabell County, and Maryland Casualty Company, surety on Stone's official bond. Defendant answered denying any liability in the premises, the case was tried by a jury, and the jury returned a verdict in plaintiff's favor in the amount of $3500.00, the amount of the bond. A motion to grant a new trial or for judgment in accordance with defendants' previous motions for a directed verdict was overruled from which order this Court granted an appeal on June 16, 1964.

Plaintiff's testimony is to the effect that: she was employed as a nurse's aide in the pediatrics ward of St. Mary's Hospital in Huntington, West Virginia; on April 10, 1962, at approximately 4:00 p.m., two armed, uniformed constables, one of whom was Stone, came to the desk or counter on her floor and handed a paper to the head nurse; as plaintiff was approaching the desk, Stone said "That is the girl. We want her. We are going to take her."; she went behind the desk, Stone and the other constable remaining in front of it; Stone kept insisting that she was the person sought and disputing her assertions that her father, in whose home Stone alleged he had seen her picture, was deceased and of the make of automobile she used; Stone kept getting louder and she be⸱

came hysterical; and, after 35 to 45 minutes the constables left but she was unable to complete her work shift, which normally ended at 10:00 p.m., leaving work at 6:30 p.m. On cross-examination plaintiff testified that: Stone had attempted to come behind the desk but was unable to; at no time was she touched by the officers; and, she had no intention of going with them unless they insisted. However, on redirect, she testified, in answer to the questions, "Mrs. Sovine, did you feel free to go from the place that they were talking to you? Did you feel that you could have walked down the hall or out of that building without restraint?, No, if I had walked out they would have grabbed me, just the way they were acting." Plaintiff is corroborated as to the material matters stated above by fellow employees present at the occurrence, with the exception, of course, of her subjective beliefs, the witnesses varying principally only in their estimates of the time elapsed during the officers' visit, the estimates ranging from 15 to 45 minutes.

Plaintiff also introduced as a witness, Emory Sovine, the father of Jane Ball, alias M. Sovine, the person named in the warrants and for whom Stone was searching. Mr. Sovine described his daughter as having "between blond and brown" hair, 5 feet eight or ten inches tall and weighing about 150 pounds, and further testified that the officers had come to his home seeking his daughter; he had informed them that she had told him that she was working at St. Mary's Hospital and supplied them with a billfold-size photograph.

No evidence of special damage was introduced by the plaintiff nor does her description appear in the record, although her appearance, of necessity, was noted by the trial court and jury. Plaintiff's brief on this appeal describes her as a "small, slightly built, black-haired young female."

For the defendants, Clarence Carter, the constable accompanying Stone, testified: he and Stone went to Mr. Sovine's home where they were informed that the person sought was working at St. Mary's Hospital; a picture was on the wall but the witness did not know whether it was of Mr. Sovine's daughter or not; he did not see any smaller

picture; the daughter was described to Stone as blond, weighing 150 pounds; at the hospital a colloquy did take place between Stone and plaintiff, during which plaintiff became hysterical, consuming approximately 30 minutes; neither of them attempted to go behind the desk or to touch plaintiff; and, Stone was not loud or boisterous on the occasion. Stone, in his own defense, denied Mr. Sovine had given him any description of his daughter, that he had any photograph of her, and that anything untoward took place during the incident while admitting that plaintiff began crying and that, in a previously taken deposition, he had stated that Mr. Sovine had described his daughter as ". . . about 26, 140 pounds". One other witness testified for the defendant that she had been requested by Stone to be present at the hospital inasmuch as Stone was to serve a felony warrant upon a women described to her as dark, approximately five feet two or three and fairly heavy. This witness denied any loud talking but stated that plaintiff became frightened and hysterical.

Several errors are assigned on this appeal, only two of which, as to the sufficiency of the evidence and the question of excessiveness of the verdict, merit discussion in this opinion.

The word "arrest" as it pertains to the action of an officer in taking into custody a citizen is defined in Webster's New International Dictionary, Second Edition, as follows: "The taking or detainment (of a person) in custody by authority of law; legal restraint of the person; custody; imprisonment. An arrest may be made by seizing or touching the body; but it is sufficient if the party be unequivocally within the power of the officer and submit to the arrest. . . ." This statement is contained in Words and Phrases, Arrest, p. 237: "The term 'arrest' has a technical meaning, and implies that the person is restrained of his liberty by some officer of the law, armed with lawful process authorizing the arrest. The officer need not touch the person of such party to make the arrest effectual, but he must have and intend to have control of the party's person.", citing *Lawrence v. Buxton*, 102 N. C. 129, 131, 8 S. E. 774, 775.

This Court held in *Johnson* v. *Norfolk & Western Railway Co.,* 82 W. Va. 692, 97 S. E. 189, that "An unlawful arrest constituting false imprisonment may be effected without manual seizure or touching of the subject of the arrest. Such words and conduct of a known officer as give reasonable ground for belief on the part of the subject, that the officer has present intention to make the arrest, and submission on the part of the subject, in good faith and under the belief that he has been arrested or will be arrested immediately, are sufficient."

It took an unusual coincidence of circumstances to cause Stone to come to the third floor of the St. Mary's Hospital where the plaintiff was employed. A woman using the name Sovine had passed the worthless checks for which the felony warrants were issued and delivered to Stone and the other officer for the purpose of taking the person named in those warrants into custody. Upon their first visit to the home of Emory Sovine in Milton, several miles distant from Huntington where the hospital is located, Mr. Sovine informed the officers that it was his daughter whom they sought and that she had been passing worthless checks, some by way of forgery of his signature thereto. Unfortunately, he informed the officers that his daughter was employed at the St. Mary's Hospital although it seems evident from this record that she had falsely informed her father to that effect and that she had never been employed at that hospital. However, this information was sufficient to cause the officers to go to that place and upon inquiry they were informed that a woman named Sovine was employed there in the children's ward on the third floor.

Inasmuch as the jury rendered a verdict for the plaintiff and a judgment has been entered upon it by the trial court, we must consider the evidence most favorable to the plaintiff in determining whether it is sufficient to support the verdict and judgment thereon. The plaintiff and other witnesses testified that Stone made the following statement as the plaintiff approached the desk where the officers were in conversation with the persons stationed there: "That is the girl. We want her. We are going to take her." How-

ever, the plaintiff testified that at about that time she went behind the desk and that the discussion that occurred among Stone, the plaintiff and others was carried on across the counter of that desk, pictures of which are in the record, and that at no time did Stone go or attempt to go behind the counter. The time consumed in this discussion is variously estimated by the witnesses as from 15 to 45 minutes. At no time did the officer tell the plaintiff that she was under arrest, at no time did he seize or even touch the person of the plaintiff, and the evidence of the plaintiff as well as the other witnesses for both the plaintiff and the defendant is replete with denials by the plaintiff of her identity as the person named in the warrants and her continued efforts to convince Stone to that effect. At one point she stated that the only identification which she had was in her car parked on the hospital lot. It is not clear as to why she or the officers did not go to that place and examine her credentials. Suffice to say that after 15, or 25, or perhaps 45 minutes of discussion between Stone and the plaintiff, with the desk separating them, Stone did become convinced that the plaintiff was not the person whom he sought as the accused person named in the warrants which he had and left the hospital, the plaintiff remaining at the desk on the third floor thereof. While it is well settled that where an officer arrests an innocent person his good faith is no defense to the act, 8 M. J., False Imprisonment, § 8; *Gillingham* v. *Ohio River Railroad Co.*, 35 W. Va. 588, 14 S. E. 243; we are constrained to hold, upon the facts in the case, that this plaintiff was never placed under arrest, though she unquestionably suffered embarrassment and perhaps humiliation as a result of her questioning by the officers. However, we must use the same rule in testing the action of a constable as we would a deputy sheriff or a state policeman, as the former, under our law, has the same power of arrest as do the others. The experience that this plaintiff suffered is one to which all citizens must submit where the chain of circumstances is such, as in this case, to direct the officers to her as the likely person named in the felony warrants which they had.

This Court is of the view that the evidence was insufficient as a matter of law to support the verdict against Stone and that the trial court should have directed a verdict for the defendants at the completion of all of the evidence when such motion was made. The judgment of the Circuit Court of Cabell County is reversed and the case will be remanded to that court for such proper purposes as the parties may determine. Upon our determination that the evidence is insufficient to support the verdict, we do not reach the other assignments of error, although upon the question of the excessiveness of the verdict see *Winters* v. *Campbell,* 148 W. Va. 710, 137 S. E. 2d 188; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731.

*Reversed and remanded.*