STATE OF WEST VIRGINIA, WHICH SUES FOR THE
USE AND BENEFIT OF BOBBY LEE MORRIS, *et al.*

*v.*

OKEY A. MILLS *and* THE AETNA CASUALTY AND
SURETY CO., *a corp.*

(No. 13286)

Submitted February 5, 1974.        Decided March 19, 1974.

*Lynch, Mann & Knapp, Norman Knapp, Jack A. Mann* for appellants.

*James M. Henderson, II, Anthony J. Sparacino* for appellees.

BERRY, JUSTICE:

This is an appeal by the defendant below, Okey A. Mills, hereinafter referred to as defendant, and Aetna Casualty and Surety Company, surety on his official bond, from a final judgment of the Circuit Court of Raleigh County entered March 7, 1972, wherein the court denied the defendant's motion to set aside the judgment in favor of the plaintiff below, Bobby Lee Morris, hereinafter referred to as plaintiff, and to grant the defendant a new trial. The jury returned a verdict in favor of the plaintiff in the amount of $300 compensatory damages and $1,000 punitive damages in plaintiff's action for false arrest and false imprisonment. This Court granted the appeal on December 11, 1972 and the case was submitted for decision on February 5, 1974 on the arguments and briefs filed on behalf of the respective parties.

On October 4, 1968, the date on which the incident occurred which precipitated the plaintiff's lawsuit, the defendant was the Sheriff of Raleigh County and the plaintiff was a Deputy Sheriff of Raleigh County. At approximately 6:30 p.m. the city police of Beckley received a complaint that the plaintiff, who was off-duty at the time, was creating a disturbance on Prince Street behind the courthouse. A city police officer informed a deputy sheriff of the occurrence, who in turn notified the defendant at his home. The defendant drove into

Beckley and upon receiving a radio message advising him that the plaintiff was at a place called Chi Chi's Grill in Beckley, the defendant proceeded there accompanied by Deputy Sheriff Eddy Jones. Upon entering Chi Chi's Grill, the defendant concluded from the plaintiff's actions that he was intoxicated, and the defendant told him he was going to take him home. The plaintiff denied he was "drunk" and stated that he could drive his own car, but defendant thought otherwise and drove the plaintiff home in the plaintiff's car. The defendant directed the plaintiff to stay at home the remainder of the evening or the defendant would place him in jail. Deputy Sheriff Jones followed them to the plaintiff's home and the defendant and Jones then proceeded in Jones' car to the football game at Shady Spring.

The defendant and Jones worked the high school football game and after the game drove by the plaintiff's home and discovered that plaintiff's car was gone. Shortly thereafter, the defendant and the deputy found the plaintiff's car parked outside a tavern on Route 19-21 near Prosperity, West Virginia. The defendant entered the tavern and spotted the plaintiff standing at the bar with a beer in front of him. The defendant walked over to the plaintiff and arrested him for being intoxicated in public.

Plaintiff was taken to the city police station and was given a breathalyzer test which he agreed to take and it showed a .15 percent reading which indicated the plaintiff was intoxicated, according to expert testimony. Plaintiff was then booked and kept in the county jail from approximately 11 p.m. until about 5 a.m. the next morning when he was released on bond. The charge against the plaintiff was subsequently dismissed and plaintiff instituted this action.

During the trial the testimony of witnesses as to the sobriety of the plaintiff was conflicting. Numerous witnesses testified that the plaintiff appeared intoxicated on the night in question and numerous witnesses testified

that he appeared sober. The plaintiff testified that he had drunk one 10 or 12 ounce glass of beer early in the afternoon and had one beer at Chi Chi's Grill. He testified that he was actively engaged in campaigning for the democratic candidate for sheriff in the general election and was selling "Tickets for Democrats" at the various commercial establishments that he visited on the day in question.

It appears that there was considerable animosity among the deputy sheriffs as a result of the impending general election. By law, the defendant could not succeed himself as sheriff. During the primary elecion 24 of the 26 deputy sheriffs supported the losing candidate. The plaintiff was one of the two deputies who supported the winner. The plaintiff testified that the defendant's attitude toward him became hostile after the plaintiff selected the candidate he was supporting in the election. However, the defendant testified that he, the defendant, was neutral as to the outcome of the election and did not support any candidate. The defendant also testified that he was specifically looking for the plaintiff after he was informed that the plaintiff had caused a disturbance in Beckley and he stated that he did not want the city police to handle the matter because it was his policy to look after his own men.

The plaintiff was discharged by the defendant the day after his arrest but was reappointed as a deputy sheriff on January 1, 1969 when the new sheriff took office. The plaintiff claimed damages for loss of wages, as well as a $15 per month raise which went into effect July 1, 1969 for which he would have been eligible if he had not lost his seniority. However, during the period from October 5, 1968 until January 1, 1969 the plaintiff obtained another job which mitigated his damages.

The defendant assigned numerous errors in his brief which were not contained in the petition for the appeal and are not discussed or argued in his brief and thus will not be considered by this Court. The principal errors

relied on by the defendant are: (1) That the trial court erred in giving to the jury Instruction Number C over the objection of the defendant; (2) the trial court erred in giving Instruction C offered by the plaintiff and Instruction 14 offered by the defendant, because they were inconsistent instructions; (3) the trial court erred in giving to the jury Instruction I-1 offered by the plaintiff. These assignments of error will be discussed in reverse order.

Instruction I-1 involved punitive damages but there was only a general objection to the giving of this instruction by the defendant. The objection contained in the record is as follows: "The Defendant objects to Plaintiff's Instruction I-1 as not being supported by the evidence, and contrary to the law." It has been repeatedly held that this Court will not consider instructions where only general objections are made thereto. *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736; *Shaw v. Perfetti,* 147 W.Va. 87, 125 S.E.2d 778; *Fortner v. Napier,* 153 W.Va. 143, 168 S.E.2d 737; *Lambert v. Great Atlantic & Pacific Tea Co.,* 155 W.Va. 397, 184 S.E.2d 118. It was held in point 2 of the syllabus of the *Lambert* case that:

> "The general rule is that no party may assign as error the giving of or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objections and ordinarily this Court, in the exercise of its appellate jurisdiction, will consider only objections which have been made in this manner."

Specific objections to the giving or refusal to give an instruction are required by Rule 51, R.C.P., the pertinent part of which reads as follows: " * * * No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; * * * ."

The assignments of error numbers 1 and 2 will be considered together. Instruction Number C offered by the plaintiff and given by the court to the jury reads as follows:

"THE COURT FURTHER INSTRUCTS THE JURY that in determining whether Okey A. Mills was justified in arresting said Bobby Lee Morris, you must first determine whether or not the plaintiff, Bobby Lee Morris, was intoxicated. If after considering all of the evidence in this case you find that the said Bobby Lee Morris was not intoxicated, then your verdict shall be in favor of the plaintiff, Bobby Lee Morris, and against the defendants Okey A. Mills and The Aetna Casualty and Surety Company, and you shall assess damages for the plaintiff in such amounts as you shall find from the evidence to compensate the plaintiff, Bobby Lee Morris, as testified to in this case and as governed by the other instructions given you by the Court."

Instruction Number 14 offered by the defendant and given by the court to the jury reads as follows:

"THE COURT INSTRUCTS THE JURY that a crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case. Therefore the Court instructs the jury that if you believe by a preponderance of the evidence in this case that when the facts and circumstances occurring within the observation of the defendant at the time he made the arrest in connection with what, under the circumstances, may be considered common knowledge give him probable cause to believe or reasonable grounds to suspect that plaintiff was intoxicated in a public place, then plaintiff's arrest was lawful and he cannot recover in this case, and your verdict should be for the defendant."

The law in this state provides that anyone who appears in a public place in an intoxicated condition is guilty of

a misdemeanor. Code, 60-6-9 (1),(6), as amended. It is equally clear that the sheriff of any county is authorized to arrest and hold in custody, without a warrant, anyone who is intoxicated in his presence. The last paragraph of Code, 60-6-9 (6), as amended, reads as follows: "The sheriff of any county or his deputy is hereby authorized and empowered to arrest and hold in custody, without a warrant, until complaint may be made before a justice and a warrant issued, any person who is the presence of such sheriff or deputy violates any one or more of subsections one to six, both inclusive, of this section."

In the case of *State v. Mullins,* 135 W.Va. 60, 62 S.E.2d 562, the defendant, an officer of the law, attempted to arrest a person for intoxication and the arrest was resisted. While resisting arrest, the man was killed and the officer was indicted and convicted of manslaughter. The conviction was reversed and this Court stated: "In our opinion, if, in a public place, he was either in an intoxicated condition, or in a grossly intoxicated condition, or so appeared to the police officer, that officer had the right to arrest him without warrant, and it follows that in such a situation Chapman did not have the right to resist." It was held in the syllabus of that case that: "Appearing in a public place in an intoxicated condition constitutes a misdemeanor, for which, if committed in his presence, a duly appointed and qualified police officer of a municipality of this State, acting as such, may arrest an offender without a warrant."

The evidence in the case at bar is conflicting as to whether or not the plaintiff was intoxicated when he was arrested by the defendant without a warrant. The question of whether the defendant was justified in making the arrest in the instant case, without a warrant, is one for jury determination. 8 M.J., *False Imprisonment,* § 20; *Marcuchi v. Norfolk and Western Railway Co.,* 81 W.Va. 548, 94 S.E. 979. After the plaintiff was arrested he agreed to take the breathalyzer test and was taken to the Beckley police station where the test was administered. The city

policeman who administered the test testified that the plaintiff was intoxicated when he was brought to the station and the breathalyzer test clearly indicated that he was intoxicated.

When the plaintiff was taken to the county jail he was placed in the juvenile section at the direction of the sheriff, but because of the plaintiff's behavior and cursing he was placed in the "drunk tank" at the direction of the sheriff. The plaintiff was released from jail about 5 o'clock the following morning, October 5, 1968, upon a bond being given by his wife and presented to the jailer.

It is the plaintiff's contention that probable cause for an arrest and lack of malice in making an arrest are not defenses to an action for false arrest, and cites the cases of *George v. Norfolk and Western Ry. Co.,* 78 W.Va. 345, 88 S.E. 1036; *Noce v. Ritchie,* 109 W.Va. 391, 155 S.E. 127; *City of McMechen v. Fidelity and Casualty Co. of New York,* 145 W.Va. 660, 116 S.E.2d 388; *State ex rel. Sovine v. Stone,* 149 W.Va. 310, 140 S.E.2d 801. The *McMechen* and *Sovine* cases are not in point. The *McMechen* case deals with a felony, and in the *Sovine* case it was held that there was no arrest made. In the *George* and *Noce* cases it was undisputed that a misdemeanor had not been committed in the presence of the officer. In such cases probable cause for an officer to believe that a misdemeanor is being committed does not permit or authorize an officer to make an arrest without first obtaining a warrant. The controlling issue in the case at bar is whether the misdemeanor of being intoxicated in a public place was committed in the presence of the defendant, and the evidence is conflicting. It is contended by the plaintiff that the plaintiff's Instruction C contains his theory of the case, and defendant's Instruction 14 contains defendant's theory of the case and that the two instructions merely represent the two theories involved in the case. This contention is incorrect, because the two instructions present conflicting theories of law. Instruction C did not instruct the jury that the defendant could consider any facts and circumstances occurring within

his observation which may have given him cause to believe, or reasonable grounds to suspect, that the plaintiff was intoxicated and thus was an incorrect statement of law. The defendant's Instruction Number 14 is based on language contained in the case of *Noce v. Ritchie, supra,* cited by the plaintiff. In the *Noce* case the officer arrested the plaintiff for adultery and fornication, which act admittedly was not committed in the presence of the arresting officer, and he had no warrant to arrest the plaintiff for such misdemeanor. It was stated in that case that: "A crime is committed in the presence of an officer, when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." The giving of both plaintiff's Instruction C and defendant's Instruction 14 by the court would clearly tend to mislead and confuse the jury and is, therefore, reversible error. *Penix v. Grafton,* 86 W.Va. 278, 103 S.E. 106; *Quality Bedding Co. v. American Credit Indemnity Co. of N.Y.,* 150 W.Va. 352, 145 S.E.2d 468; *State Road Commission v. Darrah,* 151 W.Va. 509, 153 S.E.2d 408. This principle of law is clearly stated in the case of *State Road Commission v. Darrah, supra,* in which it was held in point 1 of the syllabus that: "It is error to give inconsistent instructions, even though one of them embodies a correct statement of law, inasmuch as the jurors in such circumstances are left to determine which statement of law is correct and inasmuch as it is impossible for a court later to determine upon what legal principle the verdict is based."

For the reasons stated herein, the judgment of the Circuit Court of Raleigh County is reversed, the verdict of the jury is set aside and the case is remanded for a new trial.

*Judgment reversed;*
*verdict set aside;*
*case remanded.*