## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Wayne L. Evans, as Executor and**
**personal representative of the**
**Estate of Douglas E. Evans, deceased,**
**Plaintiff Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 17-1090** (Mercer County 14-C-394-05)

**Bluefield Hospital Company, LLC,**
**d/b/a Bluefield Regional Medical Center,**
**and Stephen DeGray, M.D.,**
**Defendants Below, Respondents**


### MEMORANDUM DECISION

Petitioner Wayne L. Evans, as Executor and personal representative of the Estate of Douglas E. Evans, deceased, by counsel Mark R. Staun and Eric J. Buckner, appeals the Circuit Court of Mercer County's November 14, 2017, order denying his motion for a new trial. Respondent Bluefield Hospital Company, LLC, d/b/a Bluefield Regional Medical Center ("BHC"), by counsel W.E. Sam Fox, II, Mitchell B. Tuggle, and Jason Holliday, filed its response in support of the circuit court's order. Respondent Stephen DeGray, M.D. ("Dr. DeGray"), by counsel D.C. Offutt, Jr. and Jody O. Simmons, also submitted a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 20, 2012, ninety-one-year-old Douglas Evans ("the decedent") presented to Dr. DeGray's office with numerous symptoms, including cough, shortness of breath, fatigue, dehydration, difficulty swallowing, tachycardia, and low blood pressure. The decedent was accompanied by his son, Lloyd Evans, who requested that Dr. DeGray admit the decedent to the hospital due to a concern that the decedent had pneumonia.[1] Dr. DeGray ordered blood work, an x-ray, and prescribed an antibiotic before sending the decedent home. The next day, the decedent was transported to BHC where he was evaluated in the emergency department at approximately 2:30 p.m. Dr. DeGray did not personally examine the decedent at that time, but he admitted him

---

[1] Dr. DeGray testified that while it was possible that the decedent had pneumonia at that time, Dr. DeGray did not believe that the condition was then diagnosable.

1

via telephone at approximately 4:35 p.m. At that time, Dr. DeGray ordered that the decedent be administered IV fluids – normal saline and antibiotics. Dr. DeGray saw the decedent at the hospital at approximately 6:30 p.m., at which time he ordered additional tests. At 2:30 a.m. the following day, the decedent was intubated, shortly after which the decedent became asystolic, with pulseless electrical activity. A code was called at 2:38 a.m., and at 2:40 a.m. BHC staff notified Dr. DeGray of the code blue. Dr. DeGray advised that he would come to BHC; however, at 3:02 a.m., all resuscitative efforts ceased and the decedent was pronounced dead. According to the death certificate, the decedent died of acute metabolic acidosis due to sepsis.

Petitioner Wayne L. Evans, the decedent's other son, filed the underlying suit on June 9, 2014, alleging that the care provided to the decedent during his hospitalization deviated from the standard of care and that such deviation proximately caused the decedent's death. He also alleged that Dr. DeGray's care and treatment of the decedent on March 20, 2012, and during the decedent's hospitalization from March 21 to March 22, 2012, deviated from the standard of care, proximately causing the decedent's death. Following discovery, the case proceeded to trial on January 31, 2017. During voir dire, the clerk of court asked whether any member of the panel was sensible of any bias or prejudice either for or against either party in this case, and Judge Swope instructed the jury panel that they were trying to get the fairest group of people they could to rule on the issues in this case. The attorneys then proceeded with voir dire, and counsel for petitioner listed several names of individuals who may be mentioned or called to testify, requesting that the members of the jury panel indicate if they knew any of the individuals. One of the witnesses identified at that time was Debra Truitt, a charge nurse for BHC involved with the decedent's medical care. Even after that portion of voir dire ended, the circuit court gave the potential jurors another opportunity to raise a hand if they knew of any reason they should not be seated on the jury. At no point during that process did Jurors Wyrick or Markell raise a hand.

On February 1, 2017, Tonya Mills, the day shift charge nurse at BHC during the events at issue, was called by petitioner as a witness. During her testimony, she mentioned Nurse Debra "Niki" Truitt on more than one occasion. On February 3, 2017, one of the jurors became ill and was excused from the jury, so the alternate juror moved into that juror's place. Both Dr. DeGray and another doctor, Dr. Parker, were called to testify before petitioner rested his case. On February 7, 2017, counsel for BHC called its only fact/lay witness, Nurse Truitt. Nurse Truitt testified about things she did for the decedent that were not included on his medical chart, in addition to things she did that were reflected on his chart. Shortly after her testimony, one of the jurors, Amber Ealy, advised the circuit court that she knew Nurse Truitt but that she did not recognize her name when it was disclosed during jury voir dire. By the agreement of all counsel, the circuit court made a discreet inquiry of Juror Ealy concerning whether the fact that she went to high school with Nurse Truitt would affect or influence her decision in the case. The circuit court advised counsel that Juror Ealy had reported that that would not affect her decision in any way, and counsel agreed to continue the trial with Juror Ealy on the jury. Court reconvened on February 8, 2017, at which time the circuit court instructed the jury and counsel presented closing arguments. The jury retired to the jury room at approximately 1:40 p.m., and they notified the court that they had reached a unanimous verdict less than one hour later. The jury found that neither respondent deviated from the standard of care in treating the decedent.

Petitioner then filed a motion for a new trial on March 10, 2017, and the circuit court

heard argument on that motion on May 5, 2017. That motion was based on petitioner's arguments that one member of the jury, Betty Wyrick, failed to disclose either at voir dire or during trial that she was acquainted with Nurse Truitt and the jury's verdict was contrary to the weight of the evidence. In support of that motion, on May 3, 2017, petitioner filed a supplemental motion for a new trial, including an affidavit citing a third basis for granting petitioner a new trial. That affidavit was from one of petitioner's attorneys, Eric J. Buckner, who represented therein that he learned after the trial from another juror, Benjamin Markell, that Jurors Markell and Wyrick had worked with Nurse Truitt at Wal-Mart at some prior point. In its thirteen-page order, the circuit court found that petitioner's motion for a new trial based on the failure of Jurors Wyrick and Markell to reveal their connection to Nurse Truitt, either in voir dire or at trial, was denied because petitioner had not produced or attempted to produce any evidence of potential or actual bias or prejudice, either against petitioner or in favor of respondents, on the part of either juror. It also found that the jury's verdict was supported by the clear weight of the evidence and should not be disturbed by the circuit court. In so doing, the circuit court cited the testimony of multiple witnesses regarding whether the standard of care was breached, with some testifying that it was while others testified that it was not. It went on to state that the jury was presented with all of the evidence and had an opportunity to assess each witness's credibility, bias, knowledge, and qualifications, so the jury was in the position to make the determination. Therefore, it would not set aside their verdict. Petitioner appeals from the November 14, 2017, order denying his motion for a new trial.

In terms of our standard of review of the grant or denial of a new trial, we have held:

> This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *The Burke–Parsons–Bowlby Corp. v. Rice,* 230 W. Va. 105, 736 S.E.2d 338 (2012).

On appeal, petitioner sets forth two assignments of error. First, he argues that the circuit court erred in denying his motion for a new trial when two of the six jurors, Jurors Wyrick and Markell, failed to accurately represent their relationship with one of BHC's key witnesses, Nurse Truitt, by failing to disclose that they knew Nurse Truitt at any point during voir dire or the trial itself. He asserts that because neither juror came forward to disclose their association with Nurse Truitt, he and the circuit court were deprived of the opportunity to determine the extent of the relationship and the jurors' partiality. He equates the jurors' silence to false answers, which he contends leads to the suspicion of bias. Petitioner further argues that the jurors' reticence during voir dire foreclosed any challenge for cause or use of a peremptory challenge so bias must be presumed.

This Court has long held that "[t]he true test as to whether a juror is qualified to serve on the panel is whether without bias or prejudice he can render a verdict solely on the evidence under the instructions of the court." Syl. Pt.1, *State v. Wilson*, 157 W. Va. 1036, 207 S.E.2d 174 (1974). In addition,

> [t]he right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right.

Syl. Pt. 4, *State v. Peacher,* 167 W. Va. 540, 280 S.E.2d 559 (1981). Thus, this Court has long recognized the process of voir dire, meaning "to speak the truth," *Michael v. Sabado,* 192 W. Va. 585, 592, 453 S.E.2d 419, 426 (1994) as the parties' "opportunity to discover[ ] whether there are any 'relevant and material matters that might bear on possible disqualification of a juror.'" *Id.* (quoting *Human Rights Comm. v. Tenpin Lounge,* 158 W. Va. 349, 355, 211 S.E.2d 349, 353 (1975)).

> We have also noted that

> [v]oir dire must be probing enough to reveal jurors' prejudices regarding issues that may arise at trial so that counsel may exercise their challenges in an informed manner. . . . Moreover, it is difficult to perceive how the right to an adequate voir dire can be denied when, given the opportunity, a defendant fails to request additional or supplementary voir dire questions. We believe it is incumbent on a defendant to bring to the trial court's attention any deficiency in the voir dire that might impair the prospects of a fair trial. Indeed, there was nothing that prevented the defendant from asking these very questions on her own behalf during voir dire if she perceived a problem with one of the potential jurors. In *State v. Beckett,* 172 W.Va. 817, 823, 310 S.E.2d 883, 889 (1983), we suggested that where a defendant does not seek additional voir dire to demonstrate possible bias, prejudice, or disqualification, there can be no error for the failure to strike prospective jurors for cause. *See also State v. Ward,* 188 W.Va. 380, 393, 424 S.E.2d 725, 738 (1991).

*State v. Miller*, 197 W. Va. 588, 603, 476 S.E.2d 535, 550 (1996).

In the instant matter, the juror who came forward after Nurse Truitt testified told the circuit court that she did not realize that she knew Nurse Truitt until that point because Nurse Truitt had previously been identified by her married name when the juror knew her only by her maiden name. In the circuit court's order denying petitioner's motion for a new trial, it specifically found that Juror Wyrick's Facebook "friendship," which was discovered by petitioner's counsel subsequent to the trial, could have been discovered prior to the trial. The circuit court also pointed out that one of petitioner's attorneys, Mr. Buckner, attended high school with Nurse Truitt, was social friends with her, and attended the same church. It further pointed out that Mr. Buckner sent a text message to Nurse Truitt prior to the trial indicating that she would be called to testify on behalf of petitioner. Based on this information, it is reasonable to assume that Mr. Buckner knew both Nurse Truitt's maiden name and the fact that she went by "Niki" rather than "Debra." However, during voir dire petitioner's counsel chose not to identify Nurse Truitt by these other names.

4

In addition, there is no evidence that these two jurors recognized Nurse Truitt during the trial, as the affidavit from Mr. Buckner simply provides that "Mr. Markell confirmed that he knew Ms. Truitt and informed [Mr. Buckner] that he knew Ms. Truitt from when they formerly worked together at the Wal-Mart store located in Princeton[.]" Juror Markell relayed this information to Mr. Buckner only after speaking to Nurse Truitt subsequent to the trial. Reportedly, Nurse Truitt last worked at Wal-Mart more than ten years prior to the trial. Further, the only Facebook interaction between Juror Wyrick and Nurse Truitt appeared to be a birthday wish and "liking" a single photograph well before the trial. For these reasons, we find that the circuit court did not err in denying petitioner's motion for a new trial on this basis.

Petitioner's second assignment of error is that the verdict should be set aside and a new trial ordered, as the verdict was clearly contrary to the weight of the evidence in finding that neither respondent violated the standard of care. He contends that there was ample testimony that established that one or both respondents violated the standard of care so the verdict was against the weight of the evidence.

In addition to the standard of review for the denial of a motion for a new trial set forth above, this Court has held that

> "[i]n determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syl. pt. 15, *Foster v. Sakhai,* 210 W.Va. 716, 559 S.E.2d 53 (2001) (quoting Syl. pt. 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983)).

*Sydenstricker v. Mohan*, 217 W. Va. 552, 563, 618 S.E.2d 561, 572 (2005). In addition, this Court has long held as follows:

> "'When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894.' Syllabus Point 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963)." Syllabus point 5, *Toler v. Hager*, 205 W.Va. 468, 519 S.E.2d 166 (1999).

Syl. Pt. 9, *Neely v. Belk, Inc.*, 222 W. Va. 560, 668 S.E.2d 189 (2008).

While some experts and witnesses agreed with petitioner that there was a deviation from the standard of care, respondents presented evidence and testimony that established the opposite – that they complied with the standard of care. Defense experts, Drs. Parker, Petri, and Lamberti, all testified that respondents met the standard of care and did not cause or contribute to the decedent's death. For instance, Dr. Lamberti testified that it was his opinion to a reasonable degree of medical probability that "the nurses met the standard of care in caring for [the decedent

and that] nothing that the nurses did or didn't do caused [the decedent] to die." Dr. Lamberti also testified to the increased mortality rate of a ninety-one-year-old diagnosed with sepsis versus a twenty-year-old diagnosed with the same condition. He disagreed with petitioner's expert regarding the effectiveness of a non-invasive treatment called bipap, stating that "in [his] opinion, there was nothing that could have been done that would have saved [the decedent's] life." Further, Dr. Parker testified that there were no actions that Dr. DeGray should have taken on March 20, 2012, that he did not take. Dr. Parker also testified that it was his opinion to a reasonable degree of medical certainty that Dr. DeGray met the standard of care in treating the decedent in his office on March 20 and at BHC on March 21 and 22, 2017.

We have repeatedly recognized that

"'[t]he testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to the weight and credibility of such testimony.' Syllabus Point 2, *Webb v. Chesapeake & Ohio Ry. Co.*, 105 W.Va. 555, 144 S.E. 100 (1928)." Syllabus Point 2, *Papenhaus v. Combs*, 170 W.Va. 211, 292 S.E.2d 621 (1982).

Syl. Pt. 6, *Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 814 S.E.2d 205 (2018). As we set forth in *Coyne*, "[t]his is a classic 'battle of the experts,' and we decline [petitioner's] invitation to substitute our own determination as to these experts' credibility and persuasiveness for the jury's." *Id.* at --, 814 S.E.2d at 222. For these reasons, we cannot find that the circuit court abused its discretion in denying petitioner's motion for a new trial on this ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

6