796 So.2d 11 (2001)
Ginger TAYLOR, et al.
v.
Janice JOHNSON, et al.
No. 00-1660.
Court of Appeal of Louisiana, Third Circuit.
April 18, 2001.
Writ Denied August 31, 2001.
Philip Andre Fontenot, Davidson, Meaux, Sonnier, Lafayette, LA, Counsel for Defendant/Appellant, Wal-Mart Stores, Inc.
Andrew Parker Texada, Stafford, Stewart & Potter, Alexandria, LA, Counsel for Defendant, State of Louisiana through the Department of Public Safety.
Christopher J. Roy, Sr., Roy Law Office, Alexandria, LA, Counsel for Plaintiff/Appellee, Ginger Taylor.
*12 Court composed of DECUIR, SULLIVAN, and PICKETT, Judges.
PICKETT, Judge.
Defendants James Hill and Wal-Mart Stores, Inc., appeal a judgment rendered in favor of the plaintiff, Ginger Taylor. Ms. Taylor answered the appeal, alleging error in the judgment rendered below. We reverse in favor of the defendants.

FACTS
This case is making a return appearance to our court. We have previously held that the fifth supplemental and amending petition which added State Troopers Timothy Ledet and Wayne Soileau and added allegations of actions that occurred after the initial arrest of Ginger Taylor was sufficiently connected to the original cause of action against Wal-Mart and its employees that it related back to the filing of the original petition and thus was not prescribed. Taylor v. Johnson, 617 So.2d 1209 (La.App. 3 Cir.1993). In a companion case, we held that the cause of action alleged in the fifth supplemental and amending petition was not barred by lis pendens, since it did relate back to the filing of the original petition and thus predated the Grant Parish suit brought against the State and Troopers Ledet and Soileau. We also reversed a ruling which specifically dismissed Trooper Soileau from the suit on the ground that any claim against him had prescribed, for the same reason as those discussed in the first case. Taylor v. Johnson, 617 So.2d 1213 (La. App. 3 Cir.1993). On Saturday, January 16, 1988, Ginger Taylor, complaining of pain associated with an abscessed tooth, called Dr. B. C. Hollier, an oral surgeon, to obtain a prescription for pain medication at about three o'clock in the afternoon. Dr. Hollier called Jim Hill, a pharmacist at Wal-Mart, and ordered a prescription for Darvon Compound 65, a Class IV narcotic. After Jim Hill took down the information and filled the prescription, he decided to verify the prescription with Dr. Hollier.
Jim Hill said he was suspicious because the phone connection was not clear when he spoke with Dr. Hollier. It did not sound as if Dr. Hollier had pronounced his own name correctly. He attempted to reach Dr. Hollier twice with no success. Finally, he spoke to Dr. Hollier's answering service and discovered Dr. Hollier was not on call that weekend. Mr. Hill spoke to Dr. Hollier's partner, Dr. Marks, who was on call and who told him it was unlikely Dr. Hollier called in the prescription. Dr. Marks explained to Mr. Hill their office had a policy that only the on-call dentist would phone in prescriptions. This increased Mr. Hill's suspicions. He ultimately decided to call Trooper Ledet of the Diversion Investigative Unit whose responsibilities included investigating prescription fraud.
When Ms. Taylor arrived at Wal-Mart to pick up her prescription, Ms. Janice Johnson Aymond, the pharmacy clerk, told her it would be a few more minutes and asked her to wait. Ms. Taylor waited a short time and checked again to see if the prescription was ready. Again she was told it would be a few minutes. While waiting, Ms. Taylor moved freely around the store. She did some shopping. At no time did Mr. Hill or any employee of Wal-Mart attempt to physically detain her. At no time was she told she could not leave the store.
Upon being contacted by Mr. Hill, Trooper Ledet immediately went to the Wal-Mart pharmacy. Upon arrival, Mr. Hill explained to Trooper Ledet why he was suspicious of Ms. Taylor. He identified her for the trooper. After identifying her, he continued with his duties at the *13 pharmacy and had no further contact with Ms. Taylor.
Trooper Ledet conducted the investigation and made all the decisions from that point forward. He ultimately placed Ms. Taylor under arrest, handcuffed her, and took her outside. Deputies from the Rapides Parish Sheriff's office transported her to jail. She was booked. Later that evening, a Rapides Parish Sheriff's deputy contacted Dr. Hollier, who verified the prescription. Ms. Taylor was released.
Ms. Taylor filed suit against Mr. Jim Hill, Ms. Janice Johnson Aymond, Wal-Mart Stores, Inc., Trooper Timothy Ledet, Trooper Wayne Soileau, who was Trooper Ledet's supervisor, and the State of Louisiana.
Following a bench trial, judgment was rendered by the court dismissing all claims against Janice Aymond and Trooper Soileau with prejudice, and rendering judgment in favor of Ginger Taylor and against Wal-Mart Stores, Inc., James Hill, Trooper Ledet, and the State of Louisiana in the amount of $40,000.00. Wal-Mart Stores, Inc. and James Hill were assessed 75% of the fault. Trooper Ledet and the State of Louisiana were assessed 25% of the fault. Because the parties had stipulated that damages would not exceed $20,000.00, the judgment was only enforceable up to that amount.
Wal-Mart and James Hill appeal this judgment, arguing the court erred in assessing any liability on their part. Plaintiffs answered the appeal, requesting that appellants be cast with the full amount of the judgment.

DISCUSSION
Appellants have assigned as error the following:
I. The court erred when it found that Wal-Mart Stores, Inc., and/or James Hill were liable to plaintiff for false arrest and/or unlawful detention of plaintiff.
II. The court erred when it found that although the Wal-Mart pharmacist's actions were logical, they were not reasonable under the circumstances.
III. The court erred when it found James Hill and Wal-Mart Stores, Inc., liable to plaintiff under any theory of liability including La.Civ.Code art. 2315.
IV. The court erred when it awarded plaintiff $40,000.00 in general damages and denied introduction of defendants' proffered exhibits for a credit when the plaintiff had already been awarded $40,000.00 by the Louisiana Third Circuit Court of Appeal in a previously filed lawsuit and her damages from the first arrest on January 16, 1998, had already been included in that award. Alternatively, the award was excessive.
The first three assignments of error are related and will be discussed together. The trial judge, in granting judgment against the appellants, stated he was awarding damages for "mental and physical pain and suffering, false arrest, unlawful detention, aggravation, inconvenience, and nuisance." Although the trial judge did not explicitly state the legal theory upon which he based the award, the award suggests several possible theories upon which it is based, including false imprisonment and intentional or negligent infliction of emotional distress.
The tort of false imprisonment is inapplicable to the appellants' actions. An essential element of the tort of false imprisonment is detention of the person. Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3 Cir.1987). The record is void of any evidence that Mr. Hill or any other Wal-Mart employee detained Ms. Taylor, restricted her movement in the store, advised her she could not leave, or caused *14 her to be arrested. Ms. Taylor did other shopping while she waited. She testified that at one point she had grown so tired of waiting she nearly left the store. When Trooper Ledet arrived he conducted his own investigation and did not rely on Mr. Hill's suspicions in ultimately making the decision to arrest Ms. Taylor. False imprisonment is not a valid theory of recovery in this case as it pertains to Mr. Hill and Wal-Mart.
We further find the tort of intentional infliction of emotional distress inapplicable in the matter before us. The Louisiana Supreme Court articulated the elements of the tort of intentional infliction of emotional distress in White v. Monsanto Co., 585 So.2d 1205 (La.1991), as follows:
(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.
The record does not support any finding of liability against the appellants under this theory. Mr. Hill's conduct could in no way be categorized as "outrageous." In fact, the trial court made a finding of fact that his actions were "logical." This theory is inapplicable.
This brings us to an inquiry as to whether the record supports the imposition of liability based on a negligence theory. The trial court made a finding that Mr. Hill's actions were "logical." We agree. When faced with the situation and facts he had before him at that time, especially in light of his conversation with Dr. Hollier's partner, Mr. Hill acted logically by calling the authorities to report a call-in prescription that appeared suspicious.
Having found the pharmacist's actions were "logical," however, it follows that his actions were also "reasonable." When the trooper arrived and began his investigation, Mr. Hill took no further action. All decisions from that point forward were made by Trooper Ledet.
We find no negligence on the part of Mr. James Hill in the course of action he followed. The trial court's finding that his actions were "logical" is supported by the record. We find no manifest error in that determination. Because we find neither James Hill nor any other Wal-Mart employee negligent, the appellee cannot recover damages for any injuries alleged from James Hill or Wal-Mart based on a negligence theory.

CONCLUSION
We find no applicable legal theory under which the appellee can recover damages from Wal-Mart or Mr. James Hill. Because we are reversing the court's ruling on the issue of liability, the remaining assignments of error are rendered moot. Costs of this appeal are assessed against Ginger Taylor.
REVERSED.