, 568 S.E.2d 19

**Patrick B. BELCHER, Plaintiff Below, Appellant,**

v.

**WAL–MART STORES, INC., Joyce Hoover and David Walker, Defendants Below, Appellees.**

No. 30000.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2002.

Decided April 8, 2002.

Dissenting Opinion of Justice McGraw July 3, 2002.

Dissenting Opinion of Justice Starcher July 11, 2002.

---

716

Ellen R. Archibald, Brent K. Kesner, Kesner, Kesner & Bramble, P.L.L.C., Charleston, West Virginia, for appellant.

James D. McQueen, Jr., Brian Casto, McQueen, Harmon & Murphy, L.C., Charleston, West Virginia, for appellees.

PER CURIAM:

This is an appeal by Patrick B. Belcher (hereinafter "Appellant") from a February 7, 2001, order of the Circuit Court of Kanawha County granting summary judgment in favor of Wal–Mart Stores, Inc., (hereinafter "Wal–Mart") in a civil action originated by the Appellant for defamation and unlawful detention. The Appellant contends that genuine issues of material fact exist and that the lower court erred in granting summary judg-

ment. Based upon this Court's review of the record and arguments of counsel, we affirm the determination of the Circuit Court of Kanawha County.

## I. Facts and Procedural History

On August 29, 1999, the Appellant attempted to return a $845.88 computer to the Nitro, West Virginia, Wal–Mart store. The Appellant's receipt indicated that the computer had been purchased at the Nitro Wal–Mart on August 27, 1999. The Appellant approached the Wal–Mart service desk and explained that he wished to return the computer he had purchased two days earlier at the same store. The employee, Jennifer Noone, looked at the Appellant's receipt and informed the Appellant that she needed to summon a manager to approve a refund for the computer.

Prior to the Appellant's attempted return, personnel at the Nitro Wal–Mart had been advised that a theft of a computer had been perpetrated at a Pennsylvania Wal–Mart store, using a receipt which had been stolen from the Nitro Wal–Mart on August 27, 1999. The date and type of computer on the Appellant's receipt matched the date and type of computer on the stolen receipt; however, the serial number on the computer the Appellant presented for return was not checked by the Wal–Mart personnel. Based upon the date and type of computer, store managers Joyce Hoover and David Walker were suspicious of the Appellant's attempted return and request for a refund of his money.

Managers Hoover and Walker asked the Appellant to wait while they contacted their supervisor concerning the refund. The managers thereafter contacted the Nitro Police Department to request assistance in investigating the possibility of theft and determining whether the receipt displayed by the Appellant had any connection to the Pennsylvania theft. Officer David Dean [1] arrived at the Wal–Mart store and asked the Appellant to accompany him out of the customer service area into the main aisle separating the customer service area from the main part of the store. The officer then questioned the

1. Officer Dean also worked as a night security guard for the Wal–Mart store.

Appellant concerning the receipt. The Wal–Mart managers were standing nearby during most of this conversation. The Appellant testified that the managers told him they thought the receipt was "a fake, felonious receipt."

The Appellant was informed by the managers and the officer that he was not being detained, but that an investigation had to be conducted before a determination concerning the requested refund could be made. The managers and the officer thereafter walked away from the Appellant. When they returned, the Appellant's refund was processed, and his account was credited.[2]

As he continued to shop in the store after this incident, Managers Hoover and Walker approached him, apologized for the delay in refunding his account, and provided him with gift certificates for use in the Wal–Mart store. The loss prevention manager, Mr. Doug West, also approached the Appellant, apologized for the confusion, and told the Appellant that he had reviewed a videotape from the Pennsylvania robbery and had determined that the Appellant was not on the videotape.

On September 3, 1999, the Appellant filed a complaint against Wal–Mart, Joyce Hoover, and David Walker, alleging unlawful detention and defamation. Subsequent to the taking of depositions of all participants, Wal–Mart filed a motion for summary judgment. The Appellant filed a cross-motion for summary judgment on the same issues, and the lower court requested that the Appellant's counsel write a letter detailing the evidence he intended to rely upon to substantiate the defamation and unlawful detention claims. Subsequent to a review of arguments submitted by the Appellant, as well as Wal–Mart's responses, the lower court entered summary judgment in favor of Wal–Mart.

In the February 7, 2001, order granting summary judgment, the lower court expressly acknowledged that "[t]he personnel at Wal–Mart had been alerted that a fraudulent

scheme had been perpetrated at a Pennsylvania Wal–Mart store involving theft of a computer by using a receipt stolen from the Nitro Wal–Mart on August 27, 1999." The lower court also recognized that the Appellant admitted that the Wal–Mart employees did not detain him. The lower court further reasoned that it was the Appellant who had informed other individuals about the Wal–Mart incident and that the Appellant had not demonstrated that "his reputation has suffered in any way from the incident; his main complaint seems to be some teasing by his friends and co-workers, after he disclosed the incident to them."

With specific regard to the defamation claim, the lower court found that "[t]here is no defamatory statement at issue here."

> If one believes everything that Mr. Belcher said, including that the Wal–Mart co-managers, Hoover and Walker, told him that they thought his receipt was "false," "felonious" and/or "fake," the worst that can be said about their statements is that they were explaining to him the basis for their investigation, though perhaps not very tactfully.

Moreover, the lower court found that the element of communication to a third party, necessary in a defamation claim, was also lacking. The court found that "there has been no evidence put before this Court that Wal–Mart communicated any information about Mr. Belcher to any third-party, aside from the police officer who came to the store, Officer Dean."

The lower court further explained that even if there had been a defamatory statement and it had been communicated, the Appellant could not "prove that he suffered any loss of his reputation in the community due to the alleged defamation."

> Mr. Belcher has been unable to provide a single incident of any kind reflecting any lowering of his reputation in the community or any hesitation from any third parties to have dealings with him, including those

---

**2.** The Appellant had waited approximately ten to fifteen minutes for the managers to respond to Jennifer Noone's initial request for approval of a refund. The Appellant then spoke with the managers for a period of time and was thereafter

questioned by the police officer. The incident lasted approximately 90 minutes from the Appellant's initial refund request to the time the refund was provided.

people standing in Wal–Mart at the time of the incident. Mr. Belcher apparently told his co-workers himself about the incident and either he or his wife told several of his acquaintances about it. Thus, Mr. Belcher cannot prove any injury done that he did not do himself. He published the information about this incident to his friends and co-workers; therefore any damages resulting therefrom were self-inflicted.

With regard to the Appellant's claim of unlawful detention, the lower court found that the Appellant "admitted that neither Mr. Walker, Ms. Hoover, or any of the Wal–Mart employees ever told him that he could not leave or that he was being detained." The court observed that the Appellant "testified that he stayed at the store because he wanted a refund, and he never asked any of the Wal–Mart personnel if he could leave." The lower court specified that the act of summoning police officers is insufficient to invoke liability upon the summoner for any independent action by the police officers. Thus, even if the police officer had detained the Appellant, "[t]o hold Wal–Mart liable for actions committed independently by the police officer is inappropriate and inconsistent with West Virginia law." Consequently, the lower court granted Wal–Mart's motion for summary judgment on both the defamation and unlawful detention claims.

The Appellant presents two assignments of error to this Court: (1) the lower court erred in finding that Wal–Mart's managers had a reason to suspect Mr. Belcher of theft, as a basis for granting summary judgment for Wal–Mart on defamation, and (2) the lower court erred in granting summary judgment on unlawful detention.

## II. Standard of Review

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record reveals that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

W.Va.R.Civ.Pro. 56(c); see Hager v. Marshall, 202 W.Va. 577, 505 S.E.2d 640 (1998). "A circuit court's entry of summary judgment is reviewed de novo." Syl.Pt. 1, Painter v. Peavy, 192 W.Va. 189, 451 S.E.2d 755 (1994).

This Court has repeatedly emphasized that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl.Pt. 3, Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York, 148 W.Va. 160, 133 S.E.2d 770 (1963). In syllabus point four of Aetna Casualty, this Court explained: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."[3] In determining whether a genuine issue of material fact exists, this Court construes the facts in the light most favorable to the party against whom summary judgment was granted. Alpine Property Owners Ass'n v. Mountaintop Development Co., 179 W.Va. 12, 365 S.E.2d 57 (1987).

Syllabus point five of Jividen v. Law, 194 W.Va. 705, 461 S.E.2d 451 (1995), defines "genuine issue" in the following manner:

Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

3. In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48, 106 S.Ct. 2505 (emphasis in original).

### III. The Defamation Claim

■ The archetype for examination of defamation claims was expressed in *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70 (1983). In syllabus point one of *Crump,* this Court explained: "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *See also Greenfield v. Schmidt Baking Co., Inc.,* 199 W.Va. 447, 485 S.E.2d 391 (1997); *Stalnaker v. Only One Dollar, Inc.,* 188 W.Va. 744, 426 S.E.2d 536 (1992); *Rand v. Miller,* 185 W.Va. 705, 408 S.E.2d 655 (1991).

Summarizing the *Crump* standard, this Court explained in *Bine v. Owens,* 208 W.Va. 679, 542 S.E.2d 842 (2000), that "to have a defamation claim, a plaintiff must show that false and defamatory statements were made against him, or relating to him, to a third party who did not have a reasonable right to know, and that the statements were made at least negligently on the part of the party making the statements, and resulted in injury to the plaintiff." *Id.* at 683, 542 S.E.2d at 846.

■ In syllabus point two of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court discussed the necessity of addressing each essential element of a cause of action in a multi-element claim, explaining as follows: "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, *such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case* that it has the burden to prove." 194 W.Va. at 56, 459 S.E.2d at 333 (emphasis supplied). Thus, if one element fails, there is no possibility for recovery, and the argument that there may be genuine issues of material fact regarding other elements will not permit a plaintiff to prevail against a defendant's motion for summary judgment.

In accord with that analytical construct, the lower court held that the Appellant's defamation cause of action failed on two essential elements, the existence of a defamatory statement and nonprivileged communication to a third party. We examine these issues separately below.

### A. Defamatory Statement

■ As this Court held in syllabus point six of *Long v. Egnor,* 176 W.Va. 628, 346 S.E.2d 778 (1986), "[a] court must decide initially whether *as a matter of law* the challenged statements in a defamation action are capable of a defamatory meaning." *Id.* at 630, 346 S.E.2d at 780 (emphasis supplied). In *Crump,* this Court addressed the definition of a defamatory statement and explained as follows:

> A statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the: community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts §. 559 (1977); *see also* syl. pt. 1, *Sprouse v. Clay Communications [Communication], Inc.,* 158 W.Va. 427, 211 S.E.2d 674 (1975), *cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107, *reh. denied,* 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (statements are defamatory if they tend to "reflect shame, contumely, and disgrace upon [the plaintiff]").

173 W.Va. at 706, 320 S.E.2d at 77.

■ The lower court examined the testimony of the parties regarding the actual statements made by Wal–Mart personnel. The most pernicious statement made by the Wal–Mart managers was that they thought the Appellant's receipt was false, felonious, and/or fake. The lower court concluded that these statements, while perhaps not exceedingly tactful, were made in conjunction with the managers' efforts to explain the basis for their investigation. The Appellant admits in his deposition that "they didn't accuse me . . . ." According to the Appellant's deposition, when he asked the managers if they were accusing him of stealing the computer, they responded, "No, nobody is accusing you of stealing."

720

Based upon our de novo review of the issue of whether a defamatory statement was made, we find that the words spoken by the managers do not meet the definition of a defamatory statement consistently utilized by this Court. The managers assert that their comments expressed the opinion that the Appellant's receipt was faulty, but did not constitute accusations of criminal or otherwise offensive behavior. However, assuming hypothetically that the managers' statements were deemed defamatory, the Appellant's cause of action for defamation still fails to satisfy the second element of the defamation claim, as addressed below.

### B. Nonprivileged Communication

■■■■■ The lower court also concluded that the second *Crump* element, nonprivileged communication to a third party, is absent in the case sub judice. Upon our review, we agree with that conclusion. As referenced above, as an essential element of a defamation claim, the plaintiff must demonstrate that the defendant made false and defamatory statements "to a third party who did not have a reasonable right to know. . . ." *Bine,* 208 W.Va. at 683, 542 S.E.2d at 846. This communication "is an essential element of a cause of action for the tort of defamation because the essence of the tort is diminution of one's reputation in the eyes of others, and unless the defamatory matter is communicated to a third person there has been no diminution of reputation." *Crain v. Lightner,* 178 W.Va. 765, 772, 364 S.E.2d 778, 785 (1987).

■■■■ Wal–Mart maintains that the Appellant failed to produce evidence supporting this element of the defamation cause of action. The record reflects that Officer Dean was the only third party to whom Wal–Mart employees communicated any information concerning the Appellant. In syllabus point six of *Crump,* this Court held that " '[t]he existence or nonexistence of a qualifiedly privileged occasion . . . in the absence of controversy as to the facts, [is a] question [ ] of law for the court.' Syl. pt. 3, *Swearingen v. Parkersburg Sentinel Co.,* 125 W.Va. 731,

26 S.E.2d 209 (1943)." 173 W.Va. at 703, 320 S.E.2d at 74.

■■■■ This Court further explained as follows in syllabus point four of *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 445 S.E.2d 219 (1994),

Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.

As the Court of Appeal of Louisiana observed in *Aranyosi v. Delchamps, Inc.,* 739 So.2d 911 (La.App. 1st Cir.1999), "any statement made by an employer to law enforcement officials in the course of an investigation of criminal activity is privileged and provides no basis for a defamation suit, even assuming the accuracy of a plaintiff's allegations." *Id.* at 916, *citing Wright v. Dollar General Corp.,* 602 So.2d 772, 775 (La.App. 2nd Cir.1992).

The Wal–Mart employees recognized a legitimate need to investigate a suspicious receipt in the context of the ongoing investigation into the theft of a similar computer from a Pennsylvania store by the use of a falsified receipt obtained from the Nitro store. The receipt used in the Pennsylvania connivance had been obtained from the Nitro store on the same date as the Appellant's receipt and was for the same item. Under those circumstances, we find that the communication to the police officer was privileged and such communication does not subject Wal–Mart to liability for defamation.

■■■■ The Appellant asserts that, in addition to communication to the police officer, other customers also may have overheard the conversations and "looked at him funny" [4]

4. In syllabus point ten of *Crump,* this Court recognized that "[t]he protection afforded by the

law of privacy is restricted to persons of ordinary or reasonable sensibilities, and does not extend

during the investigation. The Appellant did not produce any of these customers as witnesses and admits that he and his wife communicated information concerning the incident to acquaintances and coworkers. The evidence the Appellant attempts to advance regarding a communication which may have inadvertently been made to other customers is entirely speculative and does not create a genuine issue of material fact with regard to the element of communication by Wal–Mart. In syllabus point three of *Williams,* this Court explained:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

194 W.Va. at 56, 459 S.E.2d at 333.

■ Under the circumstances of this case, the Appellant was required to offer "more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams,* 194 W.Va. at 60, 459 S.E.2d at 337, *quoting Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. "The evidence illustrating the factual controversy cannot be conjectural or problematic." *Id; see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (holding that "[u]nsupported speculation is not sufficient to defeat a summary judgment motion"); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985) (holding that a non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

As referenced above, the lower court's order also included a finding that even if a defamatory statement existed and had been communicated to a third party who did not have a right to know, the Appellant's action for defamation would fail based upon his inability to produce any evidence indicating that any Wal–Mart employee statement harmed his reputation. Because we find that Wal–Mart was entitled to summary judgment on the defamation claim based upon the absence of genuine issues of material fact regarding both the existence and communication of a defamatory statement, the degree to which the Appellant may have been able to prove that the incident harmed his reputation is irrelevant.

### IV. Unlawful Detention

■ Wal–Mart has advanced the argument that the Appellant produced no evidence of unlawful detention and that the lower court was correct in granting summary judgment to Wal–Mart on the unlawful detention claim and in finding that the Appellant had admitted in his deposition that no Wal–Mart employee told him that he was being detained or that he could not leave. The lower court held: "He could not describe any gestures or other conduct by the Wal–Mart employees that would have made a reasonable person feel that he was being detained. He remained in the store so that he could obtain his refund."

■ The evaluation of the Appellant's claim of unlawful detention against Wal–Mart must focus upon the actions of the Wal–Mart employees, rather than upon any subsequent action or delay occasioned by the police officer. The issue of whether the police officer's subsequent actions constituted detention[5] is not relevant since any action by the police officer would not impose liability upon Wal–Mart. As this Court explained in the syllabus of *Lusk v. Ira Watson Co.,* 185 W.Va. 680, 408 S.E.2d 630 (1991),

> Absent evidence that the police officers acted at the direction of the merchant, the merchant cannot be deemed liable for any actions taken by the officers. The act of summoning police officers to the scene of a reasonably suspected shoplifting is not sufficient to invoke liability upon the mer-

to the supersensitive." 173 W.Va. at 703, 320 S.E.2d at 74.

5. The Appellant testified that Officer Dean explicitly told him that he was not being detained.

chant for any subsequent independent actions of the police officers.

The accommodations of West Virginia Code § 61–3A–4 (1981) (Repl.Vol.2000) must also be acknowledged. Even in Wal–Mart employees had "detained" the Appellant, that statute permits such detention to a reasonable time not to exceed thirty minutes, providing as follows:

> [A]ny owner of merchandise, his agent or employee, or any law-enforcement officer who has reasonable ground to believe that a person has committed shoplifting, may detain such person in a reasonable manner and for a reasonable length of time not to exceed thirty minutes, for the purpose of investigating whether or not such person has committed or attempted to commit shoplifting. Such reasonable detention shall not constitute an arrest nor shall it render the owner of merchandise, his agent or employee, liable to the person detained.

The Appellant's reliance upon *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643, 461 S.E.2d 149 (1995), is misplaced. In *Tanner*, the parties were physically assaulted by the Rite–Aid employees and brought an action for outrage, battery, and false imprisonment. The Rite–Aid employee approached one of the plaintiffs and "stopped her by 'roughly' grabbing her shoulder and ceasing her forward motion." *Id.* at 647, 461 S.E.2d at 153. Having examined *Tanner*, we are not persuaded that the present matter is comparable to the more egregious facts in *Tanner*.

A more factually analogous situation was encountered by the Louisiana court in *Taylor v. Johnson*, 796 So.2d 11 (La.App. 3 Cir. 2001). In *Taylor*, a prescription had been phoned into a local pharmacy, and the pharmacist became suspicious of the authenticity of the prescription request based upon the unclear phone connection and the fact that the pharmacist thought that the doctor had not pronounced his own name correctly. *Id.* at 12. After unsuccessfully attempting to contact the doctor, the pharmacist spoke with the doctor's partner and learned that it was unlikely that the doctor had called in the prescription since the "office had a policy

that only the on-call dentist would phone in prescriptions." *Id.* The pharmacist thereafter contacted the police department concerning the possible prescription fraud. When Ms. Taylor, the woman for whom the prescription had allegedly been ordered, arrived to pick up her prescription, a pharmacy clerk informed her that she would have to wait for the prescription to be filled.

In ruling on Ms. Taylor's false imprisonment claim, the court found that

> [t]he tort of false imprisonment is inapplicable to the appellants' actions. An essential element of the tort of false imprisonment is detention of the person. The record is void of any evidence that Mr. Hill or any other Wal–Mart employee detained Ms. Taylor, restricted her movement in the store, advised her she could not leave, or caused her to be arrested.

*Id.* at 13–14 (citations omitted). "At no time did Mr. Hill or any employee of Wal–Mart attempt to physically detain her. At no time was she told she could not leave the store." *Id.* at 12.

In *Miller v. Grand Union Co.*, 250 Ga.App. 751, 552 S.E.2d 491 (2001), a shopper sued a store for false imprisonment based upon an allegedly unreasonable investigation of suspected shoplifting. The Court of Appeals of Georgia held that the evidence did not establish a claim of false imprisonment "[b]ecause [store personnel] had reasonable cause to believe that shoplifting was in progress...." *Id.* at 494.

Based upon the unique facts of the case presently before this Court, Wal–Mart alleges that its employees had legitimate cause for further investigation of the Appellant's receipt and reasonably refused to provide the refund pending investigation to determine whether it was connected in any way with the felonious scheme originating in Pennsylvania. The record is devoid of evidence indicating that Wal–Mart employees informed the Appellant that he could not leave, physically restrained the Appellant, or indicated in any manner that he was being detained. In fact, the Appellant testified that the managers "didn't detain me." The apparent basis for

the Appellant's decision to remain in the store was his desire for the refund.

The Appellant's decision to remain in the store does not establish the necessary elements for a claim of unlawful detention. An individual's personal belief that he was compelled to remain has not been held sufficient to justify liability for unlawful detention, absent evidence establishing a reasonable basis for the individual's belief that his personal liberty was being limited or his freedom of locomotion was being deprived. *See Riffe v. Armstrong,* 197 W.Va. 626, 640, 477 S.E.2d 535, 549 (1996) ("This Court has said that the gist of the action for false imprisonment is illegal detention of a person without lawful process or by an unlawful execution of such process"); syl. pt. 1, *State ex rel. Sovine v. Stone,* 149 W.Va. 310, 140 S.E.2d 801 (1965) ("In order to effect an unlawful arrest constituting false imprisonment without a manual seizure or touching of the subject of the arrest, there must be such words and conduct on the part of a known officer as to give reasonable ground for belief on the part of the subject that the officer has the present intention to make the arrest and submission on the part of the subject in good faith and under the belief that he has been arrested or will be arrested immediately."); *Johnson v. Norfolk & W. Ry. Co.,* 82 W.Va. 692, 697, 97 S.E. 189, 191 (1918) ("Any exercise of force, or express or implied threat of force, by which in fact any person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment").

In *Dent v. May Department Stores, Co.,* 459 A.2d 1042 (D.C.App.1982), the District of Columbia Court of Appeals addressed the issue of a reasonable basis for the belief that one is being detained and reasoned as follows:

"[T]he unlawful detention of a person without a warrant for any length of time whereby he is deprived of his personal liberty or freedom of locomotion ... by actual force, or by fear of force, or even by words" constitutes false imprisonment.

*Id.* at 1044, *quoting Tocker v. Great Atlantic & Pacific Tea Co.,* 190 A.2d 822, 824 (D.C. 1963).

In *Weishapl v. Sowers,* 771 A.2d 1014 (D.C.2001), the court explained that the determination of whether the particular conduct constitutes false imprisonment does not depend upon the "subjective state of mind of the plaintiff...." *Id.* at 1020. Rather, it "depends upon the actions and words of the defendant, which must provide a basis for a reasonable apprehension of present confinement." *Id.* (citations omitted); *see also Wallace v. Thornton,* 672 So.2d 724, 727 (Miss. 1996), *quoting Thornhill v. Wilson,* 504 So.2d 1205, 1208 (Miss.1987) (holding that "unlawfulness of detention is based upon whether, based upon the totality of the circumstances, the actions of the defendants were objectively reasonable in their nature, purpose, extent and duration"). In examining the actions of the defendant in *Wal–Mart Stores, Inc. v. Mitchell,* 877 S.W.2d 616 (Ky.Ct.App.1994), the Kentucky court found that the plaintiff had established a legitimate basis for submitting factual issues for jury determination where the plaintiff, Mr. Blackburn, had asserted as follows:

while they were in the parking lot Jackson grabbed him by the arm and tried to put his hand in Blackburn's pants, apparently to extricate the object he thought the boy had stolen. Blackburn also testified that both Jackson and Landers "manhandled" him by grabbing his arms and taking him, against his will, to a training room in the rear of the store. Once there, Jackson closed and locked the door, and interrogated and intimidated him for approximately thirty minutes. During this time, Blackburn continued, Jackson several times ordered him to pull down his pants. Jackson also purportedly tried to persuade Blackburn to sign a statement admitting his guilt to the alleged theft, although Jackson never called the police or recovered any stolen merchandise.

*Id.* at 617; *see also Elrod v. Wal–Mart Stores, Inc.,* 737 So.2d 208, 212 (La.App. 2 Cir.1999) (holding that stationing employee "guards" at the door of interrogation room constituted evidence that suspected shoplifter was detained); *Anderson v. Wal–Mart Stores, Inc.,* 675 So.2d 1184, 1186 (La.App. 5 Cir.1996) (holding that woman who did not

leave store because she did not wish to be suspected of stealing, in the absence of testimony that she was prevented from leaving store, did not establish unlawful detention); *Coates v. Schwegmann Bros. Giant Super Markets Inc.*, 152 So.2d 865, 866 (La.App. 4 Cir.1963) (finding no liability where plaintiff was not required to remain and submitted to having bag searched).

In the case sub judice, we decline to translate the Appellant's subjective concerns or interpretation of the circumstances into a legitimate case of unlawful detention, in the absence of evidence that Wal–Mart employees actually detained the Appellant, limited his personal liberty, or restrained his freedom of motion through force or actions which would provide a reasonable basis for the Appellant's belief that he was being detained. Consequently, upon our review of this matter, we find that the lower court was correct in its determination that the Appellant presented insufficient evidence to support his claim for unlawful detention and that such claim should be resolved by summary judgment in favor of Wal–Mart.

Affirmed.

McGRAW, Justice, dissenting.

(Filed July 3, 2002)

The majority finds that the lower court was right to grant summary judgment on both the defamation claim and the unlawful detention claim. Our law favors disposition on the merits, and we have long held that summary judgment is not preferred:

> Because summary judgment forecloses trial on the merits, this Court does not favor the use of summary judgment, especially in complex cases, where issues involving motive and intent are present, *Masinter* [*v. WEBCO Co.*], 164 W.Va. [241] at 243, 262 S.E.2d [433] at 436 [1980], or where factual development is necessary to clarify application of the law. *Lengyel v. Lint*, 167 W.Va. 272, 281, 280 S.E.2d 66, 71 (1981).

*Alpine Property Owners Ass'n v. Mountaintop Development Co.*, 179 W.Va. 12, 17, 365 S.E.2d 57, 62 (1987). In light of this preference for resolution on the merits, I feel that Mr. Belcher deserved to have a jury hear his case.

With respect to Mr. Belcher's claim of unlawful detention, the majority finds that Mr. Belcher was free to go at any point during his ninety minute ordeal. It is clear that Mr. Belcher would not wish to leave the store without either the computer or his $845.88. While the lower court found Mr. Belcher free to leave, it is unlikely in the extreme that Mr. Belcher could have picked up the computer and strolled out the door. Whether or not the actions of the store employees rose to the level of unlawful detention should have been decided by a jury.

To support its holding with respect to the claim of defamation, the majority finds that Mr. Belcher presented insufficient evidence that the store employees made a defamatory statement or communicated such a statement to a third party. Mr. Belcher presented evidence that the employees accused him, in the presence of other shoppers, of presenting a fraudulent receipt. It is clear that Mr. Belcher had to wait some time at the return desk as several employees were called over to "investigate" his receipt. It is also clear that the presence of the police officer, combined with the activities of the employees, would suggest to anyone within sight or earshot that something was amiss with Mr. Belcher. I believe that a jury should have been allowed to determine if the actions and statements of the employees, either together or separately, resulted in the communication of a defamatory statement.

Finally, the majority notes that Mr. and Mrs. Belcher undermined their defamation claim by relating their story to friends or co-workers. Considering that Mr. Belcher had to spend an hour an a half in the store on suspicion of stealing a computer he had purchased, it is little wonder that the Belchers would tell others of the miserable treatment Mr. Belcher suffered at the hands of the country's largest retailer.

Of course, in an earlier time, the very threat that a customer would become dissatisfied with his or her treatment and communicate this dissatisfaction to friends and family would prevent a store from treating its shoppers so poorly. Today however, appar-

ently the bottom line is the only thing that interests most people, so we have traded personal service from a local retailer for suspicion of robbery from one of the worlds largest companies.

Wal–Mart is West Virginia's largest employer, largest retailer, and in many communities is the only game in town. Clearly Mr. Belcher couldn't gain any satisfaction from the empty threat of taking his business elsewhere. Filing suit was essentially his only means of redress. In my view, Mr. Belcher deserved to have his case heard by a jury, thus I must, respectfully, dissent.

STARCHER, Justice, dissenting.

(Filed July 11, 2002)

I dissent because the majority opinion fails to address the demeaning, defamatory effect of Wal–Mart's interrogation of Patrick Belcher, in full view of twenty to thirty other customers. Mr. Belcher was repeatedly questioned by several Wal–Mart employees and store managers, and a local police officer, in a main aisle of the store and at the customer service desk.

The record reflects that other store customers were staring at the interaction between the store managers, the police officer and Mr. Belcher "like, he was talking to a criminal or wondering what this guy has done." In the middle of the store, Mr. Belcher was accused of counterfeiting the receipt for the computer, and was told by the store managers that he was presenting "a fake, felonious receipt." The police officer assured Mr. Belcher that he was not being detained—but also told him he could not leave because the store managers were awaiting the arrival of their loss prevention manager. Wal–Mart also refused to refund his money.

The record plainly presents triable issues of fact regarding whether Mr. Belcher was defamed and unlawfully detained. The majority opinion holds that Mr. Belcher—even though he was essentially accused of thievery—was not defamed. The majority opinion also holds that because Mr. Belcher was questioned and treated like a thief in front of total strangers, he could not prove he suffered any loss of his reputation in the community. I wholly disagree with these holdings.

Wal–Mart could have easily taken Mr. Belcher aside, into an office, and spoken with him privately. Had it done so, the instant lawsuit would likely never have been filed. Wal–Mart's concerns about a stolen computer were perfectly legitimate—but castigating a customer in plain view of the public, and treating him as guilty until proven innocent is just wrong. I would have allowed a jury to hear the evidence and decide whether Wal–Mart's concerns outweighed Mr. Belcher's dignity and reputation—even his reputation with total strangers.

I therefore respectfully dissent.