IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**
**March 8, 2022**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0349

WILLIAM DAVID HAUGHT II,
Plaintiff Below, Petitioner
v.
DAVID FLETCHER, individually and
as mayor of the TOWN OF BELLE, West Virginia
and TOWN OF BELLE, West Virginia, a municipal corporation,
Defendants Below, Respondents

Appeal from the Circuit Court of Kanawha County
The Honorable Charles E. King, Judge
Case No. 19-C-1154

REVERSED IN PART AND REMANDED

Submitted: January 25, 2022
Filed: March 8, 2022

Michael T. Clifford, Esq.
Charleston, West Virginia
Counsel for Petitioner

Cy A. Hill, Jr., Esq.
Cipriani & Werner, LLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.      "'The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.' Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983)."  Syllabus Point 5, *Zsigray v. Langman*, 243 W. Va. 163, 842 S.E.2d 716 (2020).

3.      "'Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad motive will defeat a qualified privilege defense.' Syl. Pt. 4, *Dzinglski v. Weirton Steel Corp.*, 191 W. Va. 278, 445 S.E.2d 219 (1994)." Syllabus Point 10, *Zsigray v. Langman*, 243 W. Va. 163, 842 S.E.2d 716 (2020).

i

4.    "The existence or nonexistence of a qualifiedly privileged occasion, and whether the privilege has been exceeded, in the absence of a controversy as to facts, are questions of law for the court."  Syllabus Point 3, *Swearingen v. Parkersburg Sentinel Co.*, 125 W. Va. 731, 26 S.E.2d 209 (1943).

WALKER, Justice:

Petitioner William David Haught II is a Patrolman with the Police Department of the Town of Belle, who has sued Respondent David Fletcher for defamation.[1]  According to Haught, Fletcher told Town of Belle Council Members and another patrolman that Haught had engaged in an illicit affair while on duty, knew the statement was false, and made the statement intending to harm Haught's reputation.  The Circuit Court of Kanawha County granted Fletcher's motion to dismiss Haught's defamation claim on grounds of qualified privilege.

On appeal, Haught contends that the circuit court erred when it dismissed his claim against Fletcher because he clearly alleged that Fletcher made the supposed defamatory statement maliciously.  When accepted as true and viewed in the light most favorable to Haught, that allegation precludes dismissal of Haught's defamation claim against Fletcher under West Virginia Rule of Civil Procedure 12(b)(6).  So, we reverse the circuit court's order, in part, and remand this case for further proceedings.

---

[1] Haught also sued the Town of Belle and Fletcher in his official capacity as the Mayor of the Town of Belle for defamation.  As discussed below, the circuit court dismissed Haught's defamation claim against the Town and Fletcher, as Mayor, and Haught does not appeal the dismissal of those claims.  Because Haught does not challenge the dismissal of his defamation claim against the Town and Fletcher, as Mayor, references in this Opinion to Haught's defamation claim refer only to his claim against Fletcher, individually.

1

## I. FACTUAL AND PROCEDURAL HISTORY

In November 2019, Haught filed a complaint against the Town of Belle and David Fletcher, individually and as Mayor of the Town of Belle. The complaint contained two counts: defamation and violation of, in his words, the Policeman's Bill of Rights.[2] In March 2020, the Circuit Court of Kanawha County granted Fletcher and the Town's motion to dismiss the complaint, with prejudice. Haught now appeals the court's order only as to the dismissal of his defamation claim against Fletcher, individually. So, this brief recitation of the allegations in Haught's complaint and related proceedings includes only those matters pertinent to the dismissal of that single claim.

Haught alleged that he is a patrolman with the Police Department of the Town of Belle. He further alleged that Fletcher asked Town Council Members and another patrolman, Wayne Holeston, to stay behind after a council meeting in 2019 to, as stated in the complaint, "discuss a situation with a citizen of the Town[.]"[3] Haught claimed that, once assembled, Fletcher told the Council Members and Patrolman Holeston that Haught

> was not getting a pay raise as a patrolman and that the reason
> for the same was that [Haught] was having an extramarital
> affair with the citizen's wife while he was on duty. [Fletcher]
> further advised that this had been discussed at the Finance
> Committee either on that date or at some prior date that was
> not noticed pursuant to State law or the City ordinances, and

---

[2] *See* W. Va. Code §§ 8-14a-1 to 5.

[3] Haught alleges that this violated the Open Governmental Proceedings Act, W. Va. Code §§ 6-9A-1 to 12.

that, because of this alleged affair, the Finance Committee had
not recommended a pay increase for [Haught].

Fletcher's statements, Haught claimed, "were slander per se, published with knowledge of their falsity and with the intent to cause harm to [his] reputation and otherwise, were malicious and intentional." Haught alleged further that "by stating that the alleged affair occurred while on duty," Fletcher had "accused that [he] was depriving the town of his honest services, a criminal act."

Fletcher and the Town moved to dismiss the complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(6).[4] They argued that the alleged defamatory statements were qualifiedly privileged because Fletcher had a duty to address a complaint from a Town citizen and had discussed the citizen's complaint, and the personnel matter it generated, only with Town representatives. Haught responded that Fletcher was not entitled to the defense of qualified privilege because he had acted with a bad motive, that

---

[4] The Town argued that it was immune from Haught's defamation claim—an intentional tort—because it is a political subdivision protected by the West Virginia Governmental Tort Claims Act, W. Va. Code §§ 29-12A-1, et. seq. The circuit court granted the Town's motion to dismiss the defamation claim against it, and Fletcher in his official capacity, on those grounds. The circuit court dismissed Haught's claim that the Town and Fletcher had violated the Policeman's Bill of Rights by failing to afford him notice and a hearing on the issue of the denial of a prospective pay raise as guaranteed by West Virginia Code § 8-14A-3 (1997). The court found that denial of a prospective pay raise was not a "punitive action," as defined in West Virginia Code § 8-14A-1(7) (1997), so Haught was not entitled to notice and a hearing under § 8-14A-3. Haught does not challenge either of these rulings on appeal.

is, Fletcher made the statements regarding Haught's alleged affair with malice and despite knowing the statements were false.

The circuit court granted the motion to dismiss the defamation claim against Fletcher, individually, reasoning that both the entitlement to a defense of qualified privilege and the question of whether a defendant abused that privilege are questions of law to be decided by the court. The court went on to find that,

> [e]ven viewing the allegations contained in the Complaint in the light most favorable to [Haught], the [c]ourt FINDS that Mayor Fletcher had an interest, if not a duty, as the mayor to address a complaint from a citizen that a Town patrolman was having an inappropriate relationship with [the citizen's] wife while on duty. The [c]ourt FINDS that no defamation claim exists when a mayor discusses a citizen complaint involving personnel matters pertaining to a Town of Belle police officer with Town representatives as such matters fall within the mayor's qualified privilege as the highest ranking elected official of the Town.

> [Haught] does not allege that Mayor Fletcher made the subject statement to any third-parties not associated with the Town of Belle. Rather, he only discussed this internal personnel matter with representatives of the Town of Belle outside the presence of private citizens following the public city council meeting. This undisputed fact indicates to the Court that Mayor Fletcher discussed this matter in good faith and without malice toward [Haught].

> Accordingly, this [c]ourt FINDS that David Fletcher had a qualified privilege to discuss the matters alleged by [Haught] with representatives of the Town of Belle, and thus, he may not be held personally liable for slander or defamation of character as a matter of law.

4

Haught now appeals that portion of the court's order dismissing his defamation claim against Fletcher.

## II. STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*,"[5] meaning that this Court considers the allegations in the complaint afresh to determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6] Motions to dismiss are disfavored, and courts "should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff."[7] We now apply that well-worn standard to determine whether the circuit court appropriately dismissed Haught's defamation claim against Fletcher.[8]

---

[5] Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

[6] Syl. Pt. 2, in part, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020) (internal quotations omitted).

[7] *Id*. at 520, 854 S.E.2d at 882.

[8] Haught quotes the Rule 12(b)(6) *and* Rule 56(c) standards in his briefing. The order from which Haught appeals clearly dismissed his complaint pursuant to Rule 12(b)(6). Fletcher does not suggest otherwise. We note that Haught attached to his response to the motion to dismiss a single, type-written page bearing three signatures that purports to elaborate on the allegations in Haught's complaint. The circuit court did not refer to this attachment in its order granting Fletcher's motion to dismiss.

## III. ANALYSIS

Haught contests the dismissal of his defamation claim against Fletcher on the grounds that "at the time that [Fletcher] made the statement to City Council members it was NOT in good faith," and that Fletcher "made and published a statement that he knew was false when he made it and did so to disparage" him. Because "[i]ssues regarding . . . Fletcher's conduct, knowledge, good faith, motivation . . . are for the jury to decide," Haught concludes that the circuit court precipitously disposed of his defamation claim on a Rule 12(b)(6) motion to dismiss.

Fletcher counters that had he intended to embarrass Haught (or had otherwise been motivated by malice), he "could have easily brought up the personnel issues surrounding [Haught] to any number of third-persons who have no direct interest in the subject matter." So, Fletcher concludes, the circuit court correctly assessed the allegations in the complaint and properly dismissed the claim on grounds of qualified privilege and its finding that Fletcher published the alleged defamatory statement in good faith and without malice.

Our analysis of the law begins with Haught's allegations that Fletcher published a defamatory statement about him[9] to Town Council Members and Patrolman

---

[9] It is unclear whether Haught brings his defamation claim against Fletcher as a public or private figure. *See* Syl. Pt. 2, *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 342, 480 S.E.2d 548, 551 (1996) ("Under West Virginia law, a libel plaintiff's status sets the standard for assessing the defendant's conduct. Plaintiffs who are public officials or

Holeston. "A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"[10] That the operative statement was defamatory is only one element of a defamation claim. A successful defamation claim includes five others:

> "The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983).[11]

---

public figures must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. Private figures need only show that the defendants were negligent in publishing the false and defamatory statement."). As Haught has alleged that Fletcher made the allegedly defamatory statements knowing them to be false, the distinction is not relevant for purposes of this Opinion.

[10] *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 706, 320 S.E.2d 70, 77 (1983) (quoting RST. (2D) OF TORTS § 559 (1977)).

[11] Syl. Pt. 5, *Zsigray v. Langman*, 243 W. Va. 163, 842 S.E.2d 716 (2020). *See also Bine v. Owens*, 208 W. Va. 679, 683, 542 S.E.2d 842, 846 (2000) (stating that "to have a defamation claim, a plaintiff must show that false and defamatory statements were made against him, or relating to him, to a third party who did not have a reasonable right to know, and that the statements were made at least negligently on the part of the party making the statements, and resulted in injury to the plaintiff").

"A defamation defendant, of course, has various defenses which can be asserted."[12]  Qualified privilege is the defense at issue, here.  We have stated that the defense is available "'when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter.'"[13]  Despite that succinct description of the privilege, whether it is ultimately available to a defamation defendant "may depend on all the circumstances of the particular case."[14]

The availability of the defense of qualified privilege also depends on whether the defendant used the privilege in good faith.[15]  Strong public policy supports the privilege; the good-faith requirement prevents its abuse.  We recently summarized these principles in *Zsigray v. Langman*:

> "Qualified privileges are based upon the public policy that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public. A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter; however, a bad

---

[12] *Crump*, 173 W. Va. at 706, 320 S.E.2d at 77 (stating that defenses of privilege and truth "allow a defendant to avoid all liability once established").

[13] *Id.* at 707, 320 S.E.2d at 78 (quoting *Swearingen v. Parkersburg Sentinel Co.*,125 W. Va. 731, 744, 26 S.E.2d 209, 215 (1943)).

[14] *England v. Daily Gazette Co.*, 143 W. Va. 700, 709, 104 S.E.2d 306, 311 (1958) (internal quotation omitted).

[15] *Id.*

motive will defeat a qualified privilege defense." Syl. Pt. 4, *Dzinglski v. Weirton Steel Corp.*, 191 W. Va. 278, 445 S.E.2d 219 (1994).[16]

*Zsigray* also concerned the qualified-privilege defense.[17] There, plaintiff alleged that defendant made defamatory statements about him to a state trooper during a criminal investigation.[18] The circuit court granted plaintiff's motion to dismiss the defamation claim pursuant to Rule 12(b)(6), on the grounds that the alleged defamatory statements were privileged because they were made to law enforcement at the beginning of a judicial proceeding.[19]

We reversed the dismissal of the defamation claim. We compared the case to the circumstances of *Belcher v. Wal-Mart Stores, Inc.*, which also involved a witness's

---

[16] Syl. Pt. 10, *Zsigray*, 243 W. Va. at 163, 842 S.E.2d at 716. *See also Crump*, 173 W. Va. at 707, 320 S.E.2d at 78 (stating that "[a]lthough motive is irrelevant when an absolute privilege is involved, a bad motive will defeat a qualified privilege defense"); RST. (2D) OF TORTS § 599 (1977) ("One who publishes defamatory matter concerning another upon an occasion giving rise to a conditional privilege is subject to liability to the other if he abuses the privilege.").

[17] *Zsigray*, 243 W. Va. at 172, 842 S.E.2d at 725.

[18] Plaintiff was under investigation after defendant, a manager of a McDonald's restaurant, reported to the State Police that plaintiff had cursed at her and threatened her while returning an unsatisfactory chicken sandwich to the McDonald's drive-through. *Id.* at 167, 842 S.E.2d at 720. In plaintiff's own words, defendant had lectured him about the sandwich, but he "'didn't want a lecture on the sandwich. I asked for a refund. So I called her a stupid f---ing b---- again and she give me my refund and we left. The next thing I know, I have a warrant out for arrest for harassment.'" *Id.* Plaintiff had also been in a dispute with defendant over his repeated requests for extra syrup for his pancakes. *Id.*

[19] *Id.* at 168, 842 S.E.2d at 721.

statements to law enforcement.[20]  There, this Court affirmed a grant of summary judgment

to Wal-Mart, upholding the circuit court's ruling that alleged defamatory statements to

police made by store employees were based on a legitimate need: an ongoing investigation

into computer theft.[21]  In *Zsigray*, we acknowledged that defendant's theory paralleled our

reasoning in *Belcher*, stating that, "[a]s in *Belcher*, [defendant] asserts that her statements

were entitled to qualified privilege because they were made in good faith about a subject

in which she had an interest (her safety), and they were limited to the person who had a

legitimate interest in the subject, Trooper Varner."[22]  But, we held that those parallels

simply were not enough to affirm the circuit court's dismissal of plaintiff's defamation

claim, at least on the pleadings, explaining that:

> Mr. Zsigray's complaint alleged that Ms. Langman
> "slandered and libeled the Plaintiff by intentionally and
> *maliciously making false and misleading statements* both
> orally and in writing in the public domain . . . with the intent to
> damage . . . the Plaintiff" (Emphasis added.) For purposes of
> Ms. Langman's motion to dismiss, the circuit court was
> required to construe the complaint "in the light most favorable
> to plaintiff, and its allegations are to be taken as true." *Lodge
> Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245
> S.E.2d 157, 158 (1978). Because Mr. Zsigray's complaint
> alleged that Ms. Langman had a bad motive ("maliciously
> making false and misleading statements") when making her
> statements to Trooper Varner, his complaint included

---

[20] *Id*. at 173, 842 S.E.2d at 726 (citing *Belcher v. Wal-Mart Stores, Inc.*, 211 W.Va. 712, 568 S.E.2d 19 (2002)).

[21] *Belcher*, 211 W. Va. at 720, 568 S.E.2d at 27.

[22] *Zsigray*, 243 W. Va. at 173, 842 S.E.2d at 726.

sufficient allegations to withstand a motion to dismiss on this portion of the defamation claim.[23]

In sum, in *Zsigray*, plaintiff's defamation claim survived a Rule 12(b)(6) motion to dismiss premised on the qualified-privilege defense because plaintiff alleged that the defendant had made the putative defamatory statements with malice and despite knowing that they were not true.

So it is, here. Haught has alleged that Fletcher published defamatory statements about him to third parties "with knowledge of [the statements'] falsity and with the intent to cause harm to [Haught's] reputation and otherwise." As in *Zsigray*, Haught has alleged that Fletcher made the alleged defamatory statements with a bad motive, an allegation that is sufficient to preclude Rule 12(b)(6) dismissal of the defamation claim at issue in this case.

In dismissing Haught's defamation claim against Fletcher, the circuit court acknowledged Haught's allegation that Fletcher acted in bad faith when making the challenged statements to Town Council Members, Patrolman Holeston, and the Town Finance Committee. But the circuit court did not credit that allegation. Instead, the court focused on Haught's failure to allege that Fletcher had discussed the alleged affair with third parties, rather than representatives of the Town of Belle, only. According to the circuit court, that "indicate[d] . . . that Mayor Fletcher discussed this matter in good faith

---

[23] *Id*. at 173–74, 842 S.E.2d at 726–27.

11

and without malice toward [Haught]." That is an inference made in Fletcher's favor, not Haught's. As all inferences are to be made in the plaintiff's favor when assessing the sufficiency of a complaint under Rule 12(b)(6), it was error to rely on that inference to find that Fletcher acted in good faith, despite Haught's clear allegation to the contrary, and so to dismiss Haught's defamation claim against Fletcher.

"The existence or nonexistence of a qualifiedly privileged occasion, and whether the privilege has been exceeded, in the absence of a controversy as to facts, are questions of law for the court."[24] A court may—at some point—determine as a matter of law that Fletcher made the alleged defamatory statements about Haught on a qualifiedly privileged occasion and did not abuse that privilege. But taking as true the allegations in Haught's complaint and all inferences in his favor, we are bound to conclude that it is premature to do so, now, when it is possible that Haught may yet prove a set of facts in support of his defamation claim against Fletcher that would entitle him to relief.

## IV. CONCLUSION

For the reasons discussed above, we reverse that portion of the March 10, 2020, order dismissing Haught's defamation claim against Fletcher, individually, and remand this case to the circuit court for further proceedings consistent with this Opinion.

REVERSED IN PART AND REMANDED

---

[24] Syl. Pt. 3, *Swearingen*, 125 W. Va. at 731, 26 S.E.2d at 210.